600 P.2d 258

**STUCKEY'S STORES, INC., a Delaware Corporation, Individually and as Representative on behalf of its Franchisees in the State of New Mexico, George Bassett, Robert B. Gottlieb and Shelby C. Phillips, Jr., Plaintiffs-Appellants,**

v.

**Fred O'CHESKEY, Chief Highway Administrator, State Highway Department, Defendant-Appellee.**

**No. 11946.**

Supreme Court of New Mexico.

Aug. 6, 1979.

Rehearing Denied Sept. 11, 1979.

Olmsted & Cohen, Charles D. Olmsted, G. Gary Duncan, Santa Fe, for plaintiffs-appellants.

Jeff Bingaman, Atty. Gen., V. Henry Rothschild, Stephen S. Hamilton, Asst. Attys. Gen., State Highway Dept., Santa Fe, for defendant-appellee.

Sutin, Thayer & Browne, Raymond W. Schowers, NMCLU, Albuquerque, amicus curiae.

## OPINION

SOSA, Chief Justice.

The questions we address in this appeal are:

1) Does the New Mexico Highway Beautification Act, §§ 67–12–1 to 14, N.M.S.A. 1978 (hereinafter referred to as the Act), abridge plaintiffs' freedom of speech in violation of the first[1] and fourteenth amend-

---

1. The first amendment provides in relevant part that:
 Congress shall make no law . . . abridging the freedom of speech, . . . .

ments[2] to the United States Constitution and Article II, § 17[3] of the New Mexico Constitution?

2) Do the permit provisions of the Act violate the just compensation and due process clauses[4] of the United States and New Mexico Constitutions?

3) Are plaintiffs' outdoor advertising signs erected prior to the 1971 amendments to the Act "lawfully erected" under state law and thus entitled to compensation in the event the State condemns them under the Act?

4) Did the State Highway Department waive any right to claim it can destroy all of plaintiffs' lawfully erected signs for which 1976 permit fees had been paid by reason of the Department's acceptance of the fees?

5) Is the State Highway Department equitably estopped from claiming that certain of the plaintiffs' signs may be taken by it without the payment of just compensation?

On August 9, 1976, plaintiff Stuckey's Stores, Inc. (hereinafter referred to as Stuckey's), a Delaware corporation, individually and as a representative of its New Mexico franchisees, filed this action in the District Court of Santa Fe County seeking a judgment declaring the Act and certain regulations adopted thereunder unconstitutional. Stuckey's also sought a preliminary injunction enjoining defendant from destroying plaintiffs' outdoor advertising signs pursuant to the Act.

On January 11, 1978, after a three-day non-jury trial, the district court entered its judgment against plaintiffs on all issues. The court concluded that the Act is a valid exercise of the State's police power. It also concluded that enforcement of the Act against plaintiffs does not deny them due process of law or freedom of speech in violation of the United States and New Mexico Constitutions. Plaintiffs appeal.

Plaintiffs Bassett, Gottlieb and Phillips own lands adjacent to the rights-of-way of interstate and primary highways in New Mexico. Outdoor advertising signs relating to plaintiffs' stores are situated on these lands, which are located outside of any zoned industrial or commercial areas. Plaintiffs' businesses consist of furnishing and selling gasoline and other motor products, food, candy, souvenirs and novelties to motorists using the interstate and primary highways along which their businesses are located. Plaintiffs' stores are rurally located and, in most instances, are a substantial distance from the closest town along the same interstate or primary highway at which similar goods or services are available. Approximately 80 percent of plaintiffs' customers are out-of-state passenger car motorists; 15 percent are in-state passenger car motorists from other parts of New Mexico; and 5 percent are local passenger car motorists.

The location of a Stuckey's store along an interstate or primary highway is made known to motorists of such highways by means of outdoor advertising signs located outside, but within 660 feet of, the right-of-way of such highways on privately owned

2. Section 1 of the fourteenth amendment provides in part that:

 No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, . . . . . .

3. Article II, § 17 provides in pertinent part that:

 Every person may freely speak, write and publish his sentiments on all subjects, . . and no law shall be passed to restrain or abridge the liberty of speech . . . . .

4. The fifth amendment to the United States Constitution provides: ·

No person shall . . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation. Article II, § 20 of the New Mexico Constitution provides that:

 Private property shall not be taken or damaged for public use without just compensation.

Article II, § 18 of the New Mexico Constitution provides in part that:

 No person shall be deprived of life, liberty or property without due process of law; . . . . .:

land pursuant to agreements between the store owner and the owner of the land on which the signs are situated. Advertising signs are spaced at intervals along the highway in both directions from plaintiffs' stores.

The New Mexico Highway Beautification Act was promulgated in 1966 in response to the federal Highway Beautification Act of 1965, *as amended*, 23 U.S.C. §§ 131, 136, 319 (1966 & Supp.1979). *See* N.M. Laws 1966, ch. 65, §§ 1–17. The federal Act specifies that unless a state provides for effective control over outdoor advertising along its interstate and primary highways, federal-aid highway funds will be reduced by amounts equal to 10 percent of the amounts which would otherwise be apportioned to that state. 23 U.S.C. § 131(b).

The New Mexico Act conforms with the requirements of the federal Act. It provides that:

> In order to promote public safety, health, welfare, convenience and enjoyment of public travel, to protect the public investment in public highways and to preserve and enhance the scenic beauty of lands bordering public highways, it is the public policy of this state to regulate the erection and maintenance of outdoor advertising . . . in areas adjacent to the interstate and primary systems in accordance with the Highway Beautification Act [67–12–1 to 67–12–14 NMSA 1978]. The legislature finds that regulation of outdoor advertising . . . is for a highway purpose.

§ 67–12–3.

The Act only applies to New Mexico's federal-aid interstate and primary highway systems. It does not apply to New Mexico's secondary system or to other state highways. According to State Highway Department surveys, approximately 5.6 percent of the total highways and roads in New Mexico are currently designated as interstate and primary highways. The Act prohibits the erection and maintenance, after 1966, of any outdoor advertising within 660 feet of the nearest edge of the right-of-way of an interstate or primary highway, unless it is an on-premise sign, an off right-of-way sign located in areas which are zoned industrial or commercial [5] under authority of law, or in unzoned industrial or commercial areas [6] as defined by regulations promulgated by the State Highway Commission (hereinafter referred to as Commission). § 67–12–4.

The Act also provides that the Commission shall establish and collect uniform fees for the issuance of permits for outdoor advertising. § 67–12–5(C). Failure of timely payment of the permit fee renders the outdoor advertising subject to removal by the Commission without compensation and at the owner's expense. § 67–12–5(D).

I. *Whether the Act Abridges Plaintiffs' Freedom of Speech*

In their first point, plaintiffs claim that the Act impermissibly infringes upon the first amendment guarantee of freedom of speech made applicable to the states by the fourteenth amendment to the United States Constitution and Article II, § 17 of the New Mexico Constitution. Plaintiffs challenge the court's findings which provide, in effect, that:

> ity operating for at least six (6) continuous months of the year with a valid 12 months business license issued by a city, county or the state, whether or not a permanent structure is located thereon, and the area along the highway extending outward 1,000 feet from and beyond the edge of such commercial or industrial activity and extending perpendicular from the center line to a depth of 660 feet from the nearest edge of the right-of-way line on the same side of the highway as the commercial or industrial activity.

**5.** Article 1050, paragraph 33 of the State Highway Commission's regulations defines "zoned industrial or commercial areas" as

> those areas which are reserved for business, commerce, trade, manufacturing, or industry, pursuant to a validly promulgated state or local ordinance or regulation.

**6.** Article 1050, paragraph 29 of the regulations defines an "unzoned commercial or industrial area" as

> any unzoned lands upon which there is located a bona fide commercial or industrial activ-

1) outdoor advertising signs limited to locations on the premises or within 1,000 feet of a Stuckey's store or to commercially or industrially zoned areas along interstate or primary highways in New Mexico afford a reasonable means of informing the motorist on such highways of the presence and location of a Stuckey's store;

2) the Act sets forth a regulatory scheme for outdoor advertising which is reasonable, tends to promote the purposes of the Act, and does not impose an undue burden upon any class of persons; and

3) the regulatory scheme constitutes a reasonable regulation as to time, place and manner of plaintiffs' communications of commercial information through outdoor advertising.

Plaintiffs argue that these findings are not supported by substantial evidence. They contend that the limited advertising allowed by the Act does not afford timely, adequate or feasible means of informing traveling motorists on interstate and primary highways of the presence of, or the goods and services available at, its stores. Plaintiffs argue that the evidence supports their requested finding that patronage, sales and property values have been substantially reduced by the limited advertising allowed under the Act. Defendant counters that the court's findings are supported by substantial evidence.

We have previously addressed the issue of the Act's constitutionality. In *National Advertising Co. v. State, Etc.*, 91 N.M. 191, 571 P.2d 1194 (1977), sign owners brought suit seeking a declaratory judgment that they should be compensated for the value of their signs which had been removed pursuant to the Act, or alternatively, if their signs were not compensable, that the Act be held unconstitutional as applied to them. This Court specifically held that the Act "is a constitutional enactment by the Legislature." *Id.* at 193, 571 P.2d at 1196. The Court said:

[I]t was implicit in the Memorandum Opinion that the Act was considered a valid exercise of the state's police power. Property is always held subject to the fair exercise of the state's police power, and reasonable regulations enacted for the benefit of the public health, convenience, safety, or general welfare are not unconstitutional. (Citations omitted.)

*Id.* at 193, 571 P.2d at 1196.

■ Plaintiffs argue that the holding in *National Advertising* is inapplicable to the case at bar because the Act was challenged on due process, rather than first amendment, grounds. For the purpose of clarification, we now hold that the Act does not abridge plaintiffs' guarantee of freedom of speech in violation of the United States and New Mexico Constitutions.

■ Like the federal Highway Beautification Act, the state Act restricts the place and manner of erection of plaintiffs' outdoor advertising structures. It does not regulate the advertising on the basis of its content nor does it completely prevent the dissemination of the same information by alternative means. Thus, we are not faced with a content regulation. In addition, the Act, as applied to plaintiffs, involves restrictions on commercial, rather than political or ideological, speech. The next question, then, is whether plaintiffs' advertising constitutes the type of speech protected by the first and fourteenth amendments to the United States Constitution and Article II, § 17 of the New Mexico Constitution. For the reasons set forth below, we hold that it does not.

Two recent United States Supreme Court cases have accorded first amendment protection to commercial speech. In *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), the Supreme Court reversed a conviction for violation of a Virginia statute that made circulation of any publication encouraging or promoting abortions in Virginia a misdemeanor. The Court rejected the argument that the advertisement involved in that case was unprotected because it was commercial speech. Instead, the Court held that advertising is not stripped of all first amendment protection. The Court stated:

Advertising, like all public expression, may be subject to reasonable regulation that serves a legitimate public interest. (Citations and footnote omitted.) To the extent that commercial activity is subject to regulation, the relationship of speech to that activity may be one factor, among others, to be considered in weighing the First Amendment interest against the governmental interest alleged.

*Id.* at 826, 95 S.Ct. at 2234, 2235.

In *Va. Pharmacy Bd. v. Va. Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), consumers of prescription drugs brought suit against the Virginia State Board of Pharmacy challenging the validity of a Virginia statute declaring it unprofessional conduct for a licensed pharmacist to advertise the prices of prescription drugs. The Supreme Court affirmed the district court's decision holding the statute void. The Court held that first amendment protection extends to advertising of a purely commercial nature and that it is not limited to speech of "public interest." Though the Court concluded that commercial speech is protected, it did not hold that such speech could never be regulated. Indeed, the Court stated that "[s]ome forms of commercial speech regulation are surely permissible." *Id.* at 770, 96 S.Ct. at 1830. The Court concluded that a state may not "completely suppress the dissemination of concededly truthful information about entirely lawful activity . . . ." *Id.* at 773, 96 S.Ct. at 1831.

In *Linmark Associates, Inc. v. Willingboro*, 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977), the Supreme Court invalidated as unconstitutional a municipal ordinance which prohibited the posting of real estate "For Sale" and "Sold" signs for the purpose of stemming what the municipality perceived as white flight from a racially integrated community. The Court stated:

[T]he Willingboro ordinance is not genuinely concerned with the *place* of the speech—front lawns—or the *manner* of the speech—signs. The township has not prohibited all lawn signs—or all lawn signs of a particular size or shape—in order to promote aesthetic values or any other value "unrelated to the suppression of free expression," . . . . (Citation and footnote omitted.) Willingboro has proscribed particular types of signs based on their *content* because it fears their "primary" effect—that they will cause those receiving the information to act upon it. That the proscription applies only to one mode of communication, therefore, does not transform this into a "time, place, or manner" case. (Citations omitted and emphasis added.)

*Id.* at 93–4, 97 S.Ct. at 1619.

■ A regulation must satisfy three criteria in order to constitute a legitimate time, place, and manner restriction. These criteria are:

(1) the restriction on speech must be "justified without reference to the content of the regulated speech," (2) the restriction must "serve a significant governmental interest," and (3) in so doing, the restriction must "leave open ample alternative channels for communication of the information." (Citations omitted.)

*John Donnelly & Sons v. Mallar*, 453 F.Supp. 1272, 1277 (S.D.Me.1978). *See also Va. Pharmacy Bd.*, 425 U.S. at 771, 96 S.Ct. 1817.

The North Dakota Supreme Court recently addressed the constitutionality of the North Dakota Highway Beautification Act in *Newman Signs, Inc. v. Hjelle*, 268 N.W.2d 741 (N.D.1978), *appeal dismissed*, 440 U.S. 901, 99 S.Ct. 1205, 59 L.Ed.2d 449 (1979). The court concluded that §§ 24–17–01 through 15, N.D.C.C.1967 (Repl.1978), which is almost identical to our Act, did not violate the first amendment guarantee of freedom of speech in that the time, place, and manner restrictions under the North Dakota Act satisfied the criteria set forth in *Va. Pharmacy Bd., supra,* and in *John Donnelly & Sons, supra.* The court in *Newman* said:

[W]e must balance the interests of the State against those of Newman. The State has an interest in providing a safe place for the users of the State highways. . . . The nature of highway driving

is such that the eyes of the driver may be diverted, sometimes subconsciously, from the road to the billboard. It is therefore reasonable to assume that the existence of highway billboards could have a detrimental effect on traffic safety.

. . . . .

The State also has a legitimate interest in protecting, preserving, and enhancing the aesthetic quality of its land . . .

*Id.* at 761. The court continued:

The interests of Newman are minimal in comparison with the public interest involved and the effect that the regulations have on the public and the businesses contracting for advertising space is not so substantial as to outweigh the State's interest in providing a safe and visually pleasing environment.

*Id.* at 761–2.

■ We hold that the Act meets the three-pronged test used to determine whether a time, place, and manner restriction is valid. First, the Act's restrictions on plaintiffs' exercise of their freedom of speech is "justified without reference to the content of the regulated speech." None of the Act's stated purposes—promotion of public safety, health, welfare, convenience and enjoyment of public travel, protection of public investment in public highways, and preservation and enhancement of the scenic beauty of lands bordering the public highways—are related to a particular message of such signs. § 67–12–3.

Secondly, the Act's restrictions on plaintiffs' freedom of speech "serve a significant governmental interest." Those interests are matters with which states have been traditionally concerned. In *John Donnelly & Sons, supra,* the federal district court stated:

The emerging majority position, however, and the one to which this Court subscribes, is that the preservation and promotion of aesthetic standards do serve as an adequate basis for comprehensive anti-billboard legislation . . . . (Citations omitted.)

453 F.Supp. at 1278. *See also Village of Belle Terre v. Boraas,* 416 U.S. 1, 5–6, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974); *Berman v. Parker,* 348 U.S. 26, 33, 75 S.Ct. 98, 99 L.Ed. 27 (1954).

Section 67–12–3 also provides that the Act is designed to "protect the public investment in public highways". State compliance with the terms prescribed by the federal Highway Beautification Act insures that New Mexico receives its share of federal-aid highway funds.

[W]hen legislation based on aesthetic considerations also promotes economic growth, a significant governmental interest is served. (Citations omitted.)

*John Donnelly & Sons,* 453 F.Supp. at 1279. *See also Moore v. Ward,* 377 S.W.2d 881 (Ky.1964); *General Outdoor Adv. Co. v. Department of Public Wks.,* 289 Mass. 149, 193 N.E. 799 (1935).

As to the third prong of testing a time, place, and manner restriction, we find that the Act "leave open ample alternative channels for communication of the information." Section 67–12–4 provides six exceptions to the outdoor advertising prohibited by the Act. Three of these exceptions are the placement of signs on premises occupied by plaintiffs' stores, in areas zoned commercial or industrial under the authority of law, and in areas unzoned commercial or industrial as defined by the Commission's regulations.

■ An additional alternative is provided by the "Logo Program." This program allows the State Highway Department to place signs approximately one-half of a mile before an interchange at which a commercial establishment, such as plaintiffs', is located, advertising the name of the business and the fact that it provides gas, food, or lodging. The Logo signs are placed within the rights-of-way of the interstate and primary highways in order to adequately inform traveling motorists on these highways of the presence of such businesses. Indeed, four of plaintiffs' ten New Mexico establishments have been approved for placement on such Logo signs. In addition, plaintiffs introduced no evidence that any

of their stores, which availed themselves of on-premise or unzoned commercial or industrial area signs after other off-premise signs had been removed, had suffered a great loss of business so as to rebut the presumption that the Act provides adequate means for plaintiffs to exercise their freedom of speech.

Finally, we note that other courts that have considered the first amendment constitutionality of comprehensive anti-billboard legislation, such as is involved in the instant case, have sustained the statute. *See John Donnelly & Sons,* 453 F.Supp. at 1280. For the foregoing reasons, we hold that the Act does not violate plaintiffs' first amendment rights.

## II. *Whether the Act Violates the Just Compensation and Due Process Clauses*

In their second point, plaintiffs attack the Act's permit provisions on two constitutional grounds. First, plaintiffs contend that the permit provisions allow for the taking of private property without payment of just compensation in violation of the fifth amendment to the United States Constitution and Article II, § 20 of the New Mexico Constitution. Second, they argue that the provisions abridge their due process rights in violation of the fourteenth amendment to the United States Constitution and Article II, § 18 of the New Mexico Constitution. Plaintiffs challenge the court's conclusions which provide, in effect, that:

1) enforcement of the Act against plaintiffs does not take or damage their private property for public use without just compensation and therefore does not violate the United States and New Mexico Constitutions; and

2) enforcement of the Act against plaintiffs does not deprive them of due process of law under the United States and New Mexico Constitutions.

The specific provisions attacked by plaintiffs include §§ 67–12–4(B) and (C), 67–12–5(C) and (D), 67–12–6(A)(1) and (2), and 67–12–6(C) and (F). These provisions were added to the Act in 1971 and became effective on March 15, 1971. *See* N.M. Laws 1971, ch. 108 §§ 2, 3 and 4.

Under § 67–12–4(B) and (C), any outdoor advertising which was lawfully in existence on the effective date of the Act and which has continued to so exist may remain in place until it is acquired by the Commission, but only so long as the advertising conforms with standards and bears permits for which the fee has been paid. The Commission may acquire outdoor advertising if it bears the requisite permit and the permit fee required in connection with the advertising's maintenance has been timely paid. § 67–12–6(A)(1) and (2). A permit fee is deemed timely paid if it is received by the Commission on or before the first day of the year for which it is being paid. Failure of timely payment renders the outdoor advertising subject to removal by the Commission without any compensation whatsoever and at the expense of the owner of the outdoor advertising. § 67–12–5(D). Finally, no notice is required in connection with permit fees. § 67–12–6(C).

■ The regulation of outdoor advertising along interstate and primary highways is a reasonable and proper exercise of the police power. *See, e. g., National Advertising,* 91 N.M. at 193, 571 P.2d at 1196; *Markham Advertising Company v. State,* 73 Wash.2d 405, 439 P.2d 248, 261 (1968), *appeal dismissed,* 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 512 (1969), *rehearing denied,* 393 U.S. 1112, 89 S.Ct. 854, 21 L.Ed.2d 813 (1969); *In Re Opinion of the Justices,* 103 N.H. 268, 169 A.2d 762, 764 (1964); *General Outdoor Adv. Co.,* 193 N.E. at 816.

In *Newman Signs, Inc., supra,* the North Dakota Supreme Court considered whether that state's Highway Beautification Act's purposes were within the scope of the state's police power. The court said:

[A] reasonable restriction of the use of property pursuant to a State's police power does not constitute a taking of private property for public use requiring payment of just compensation so long as the regulation is reasonably related to a proper purpose and does not unreasonably deprive the property owner of all or sub-

stantially all beneficial use of his property. (Citations omitted.)

268 N.W.2d at 755–6. The court concluded that the North Dakota Act was reasonably related to legitimate governmental purposes and that it did not deprive plaintiff of all or substantially all of the beneficial use of its property.

We note that the purposes of North Dakota's Act are similar to those provided in § 67–12–3 of the Act. Those purposes include "promoting the safety and convenience of those traveling on the highways; protecting the public investment in the State highway system; and promoting the enjoyment and recreational value of the State highways." *Id.* at 757. *See also Markham Advertising Company,* 439 P.2d at 260.

■ We hold that the Act's restrictions are "reasonably related to proper purposes." Furthermore, the restrictions do "not unreasonably deprive the property owner of all or substantially all beneficial use of his property." The owner of the land upon which a sign is situated merely loses the right to use or lease certain areas of his property for the purpose of highway billboards. The sign owner merely loses the right to place the billboard on certain sites. In addition, the State Highway Department only orders the removal of those signs which are illegal. Thus, a sign owner only loses the use of a sign in a particular location if he either erects the sign after 1966 in contravention of the Act or if he fails to keep his permit current. *Cf. Sullivan Outdoor Advertising v. Dept. of Transp.,* 420 F.Supp. 815 (N.D.Ill.1976). In *Sullivan Outdoor Advertising,* the federal district court addressed the constitutionality of the Illinois Highway Advertising Control Act of 1971, Ill.Rev.Stat. ch. 121, § 501 *et seq.* (1973). Like our Act, the Illinois statute provides that certain classes of signs, which are declared unlawful, are subject to removal without just compensation. The court determined that plaintiff's contention, that the provision allowing for the taking of signs without compensation conflicted with the just compensation clause of the

federal Act, was insubstantial and devoid of merit. *Id.* at 819.

■ We conclude that the Act is a valid exercise of the police power. We, therefore, affirm the court's conclusion that enforcement of the Act against plaintiffs does not violate the just compensation clauses of the United States and New Mexico Constitutions.

■ Plaintiffs next argue that even if the Act is upheld as a valid exercise of the state's police power, the Act's permit provisions are unreasonable, arbitrary and capricious and, therefore, violate the due process clauses of the United States and New Mexico Constitutions. Plaintiffs' argument focuses on § 67–12–6(C). Even though § 67–12–6(C) does not require the State Highway Department to give notice in connection with permit fees, we note that the Department's standard procedure for removal of any illegal sign is the issuance of a thirty-day notice to the sign owner. Section 1063.00 of the Commission's regulations pertains to the removal of non-compensable signs. It provides:

Permit Violations: Any outdoor advertising device, which has been erected or maintained in violation of the permit requirements of the Beautification Act or Regulations, which has been erected or maintained without timely payment of all permit fees required by the Beautification Act or Regulations, is subject to removal by the Department without any compensation whatsoever and at the expense of the owner of the outdoor advertising device. *Such removal will be preceded by notice to the owner of the outdoor advertising device,* if known, that the device must be removed within 30 days or will be subject to removal by the Department at the owner's expense. If the outdoor advertising device is not removed within the 30 days, the Department may thereafter remove the device at the expense of the owner of the device without any compensation whatsoever. (Emphasis added.)

This procedure was followed in regard to all of the signs involved in this lawsuit. We find that this procedure complies with the requirements of procedural due process.

In *John Donnelly & Sons, supra,* plaintiffs challenged the constitutional validity of the Maine Traveler Information Services Act, 23 M.R.S.A. §§ 1901–1925 (1978). Plaintiffs claimed that the Maine statute constituted an invalid exercise of the police power in contravention of the fourteenth amendment due process clause. The court determined that plaintiffs' claim was without merit. 453 F.Supp. at 1280. In *Sullivan Outdoor Advertising, supra,* the federal district court concluded that plaintiff's substantive due process claim was insubstantial. 420 F.Supp. at 820.

Plaintiffs in *Markham Advertising Company, supra,* contended that Washington's Highway Control Act deprived them of due process because it authorized the taking of their property without compensation. The Washington Supreme Court said:

> When a court determines, as we have in this case, that the police power has been properly invoked, there is no basis for this contention. (Citations omitted.) . . . Plaintiffs' due process rights have been secured to them once it has been determined that the exercise of the polic [*sic*] power is in harmony with constitutional requirements.

439 P.2d at 261.

We adopt the rationale followed by the courts in *John Donnelly & Sons, supra, Sullivan Outdoor Advertising, supra,* and *Markham Advertising Company, supra.* Plaintiffs have failed to show that the Act is not in furtherance of legitimate legislative objectives or that the means set out by the Act and by the Commission's regulations are not reasonably related to the Act's objectives. We conclude that the Act's permit provisions are not arbitrary or capricious and that they are reasonably necessary in order for the State Highway Department to ensure compliance with the Act's provisions. The court's conclusion that enforcement of the Act against plaintiffs does not violate the due process clauses

of the United States and New Mexico Constitutions is hereby upheld.

III. *Whether Plaintiffs' Signs Erected Prior to the 1971 Amendments to the Act were "Lawfully Erected" Under the Act*

In their third point, plaintiffs assert that their signs, which were erected after the effective date of the Act, but prior to the 1971 Amendments to the Act, were "lawfully erected" under the Act and, therefore, that they are entitled to just compensation in the event that the State condemns them.

Section 67–12–6(A)(4) provides that the Commission may acquire all outdoor advertising which "was lawfully in existence on the effective date of the . . . Act . . . and has continued to so exist, or was lawfully erected subsequent to said effective date." Plaintiffs contend that the Legislature intended that all outdoor advertising erected subsequent to the 1966 Act and prior to the 1971 Amendments was "lawfully erected" under the statute. Defendant counters that plaintiffs' signs which, were erected subsequent to the 1966 Act and which are not within one of the exceptions set forth in § 67–12–4, were not lawfully erected and, therefore, plaintiffs are not entitled to just compensation for the removal of their signs.

The district court found that plaintiffs' signs, which were erected subsequent to the effective date of the Act, have at all times since the date of their erection failed to qualify under any of the exceptions set forth in § 67–12–4(A). Permit applications and permit fees were not tendered as required by the Act. The court concluded that these signs are public nuisances because they failed to qualify under § 67–12–4(A) and because they failed to comply with the Act's permit provisions.

Section 67–12–4(A) establishes six exceptions to the Act's prohibition against outdoor advertising. These six exceptions are the only signs that may be lawfully erected after 1966. We conclude that those devices erected after the effective date of

the Act and prior to the 1971 Amendments which do not qualify under § 67–12–4(A)(1) through (4) were erected in violation of the Act. Therefore, we hold that plaintiffs' signs erected after the Act's effective date and prior to the 1971 Amendments were not lawfully erected.

### IV. Whether the State Highway Department Waived the Right to Claim It Can Destroy Plaintiffs' Signs

In their fourth point, plaintiffs argue that the trial court erred in refusing to rule that the State Highway Department had waived any right to claim it could destroy all of plaintiffs' signs which had paid their permit fees by reason of the Department's acceptance of late fees. The fees for the years 1968, 1969, 1970 and 1971 for the signs at issue were paid on November 18, 1971. Plaintiffs claim that because the Department accepted the fees, it waived its right to claim that the permit fees were untimely paid and, therefore, that it could acquire the signs without paying just compensation. Defendant counters that there was no waiver because a State Highway Department employee cannot waive the provisions of the Act and because there was no intent to waive the provisions.

Section 67–12–5(D) provides in relevant part that:

Any permit fee payable for the years 1966 through 1971 inclusive shall be deemed timely paid if, but only if, the fee is received by the commission prior to July 1, 1971. . . .

The fees for the signs at issue were not paid prior to July 1, 1971; they were paid on November 18, 1971. There is no dispute that the fees were not timely paid. The question is whether the Department waived its right to claim it could destroy plaintiffs' signs due to untimely payment once it accepted the fees.

 A waiver has been defined as "the intentional relinquishment or abandonment of a known right, . . . the act of waiver may be evidenced by conduct as well as by express words. (Citations omitted.)" *Cooper v. Albuquerque City Commission*, 85

N.M. 786, 790, 518 P.2d 275, 279 (1974). *See also* 28 Am.Jur.2d *Estoppel and Waiver* § 154 (1966). To constitute a waiver, the right claimed to have been waived must have been in existence at the time of the alleged waiver. 28 Am.Jur.2d *Estoppel and Waiver* § 157 (1966).

 In the case before us, the State Highway Department knew that the fees in question were not timely paid when it accepted the fees. Nonetheless the Department issued the permits. Under these circumstances, we hold that the Department cannot claim the benefit of § 67–12–5(D) in an effort to acquire plaintiffs' signs. We are of the opinion that the Department's acceptance of the late permit applications and permit fees and the issuance of the permits constituted a waiver by the Department of § 67–12–5(D). The court's conclusion that acceptance of the late applications and fees did not constitute a waiver is reversed.

### V. Whether the State Highway Department is Equitably Estopped

In their final point, plaintiffs argue that the trial court erred in ruling that the State Highway Department is not equitably estopped from claiming that certain of plaintiffs' signs may be taken by it without just compensation. Defendant counters that the Department is not estopped from ordering the removal of these signs.

The nine signs at issue were erected prior to the effective date of the Act. The signs became subject to a State Highway Department right-of-way acquisition in 1967; however, the signs were not condemned by the Department. On November 2, 1967, the Department granted plaintiffs McClure permission to relocate the signs without affecting the owner's right to compensation in the event that the signs were subsequently acquired by the Commission. The Department indicated to the sign owner before the erection of the signs at the new locations that they would be considered on-premise signs for the present. At trial defendant argued that the signs were not

**324**

relocated, but were instead "newly erected" signs, thus allowing the signs to be removed without compensation since their placement occurred after the effective date of the Act. Permit fees had been paid for the signs each year through 1968.

In *State ex rel. State Highway Department v. Yurcic,* 85 N.M. 220, 223, 511 P.2d 546, 549 (1973), the Court quoted the following language which is set forth in *Westerman v. City of Carlsbad,* 55 N.M. 550, 555–6, 237 P.2d 356, 359 (1951):

The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

In *State ex rel. State Highway Dept. Etc. v. Shaw,* 90 N.M. 485, 565 P.2d 655 (1977), the Court agreed with the defendants' assertion that equitable estoppel precluded the State from denying their recovery of the enhanced value of their land in that condemnation proceeding. This Court rejected the trial court's reasoning that estoppel did not apply because there was no false representation or concealment on the part of the State Highway Department. We said:

The trial court failed to apply that part of the *Yurcic* test which triggers an estoppel claim when the "conduct . . . is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert . . ."

It is clear that the Department is now adopting a position that is contrary to its representations to the defendants in 1973. *Representations that are contrary to the essential facts to be relied upon, even though made innocently or by mistake, will support the application of the estoppel doctrine.* (Emphasis added.)

*Id.* at 488, 565 P.2d at 658.

In the case at bar, the district court found that plaintiffs failed to show that they had relied on the Department's representation that the relocation of the signs would not affect the owner's right to compensation. It is our opinion that this finding is in error. By granting permission to plaintiffs to relocate the signs, the Department's conduct conveyed to plaintiffs that the right to compensation would not be affected. Plaintiffs acted upon that permission as is evidenced by the fact that the signs were moved to new locations soon after the permission was granted. The finding of the district court in this regard is reversed. We hold that the Department is equitably estopped from claiming that plaintiffs McClures' signs were "newly erected" and are subject to removal without just compensation.

The decision of the district court is thus affirmed in part and reversed in part. The cause is remanded to the district court for further proceedings not inconsistent with this opinion.

IT IS SO ORDERED.

PAYNE and FEDERICI, JJ., concur.