**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-035**

**Filing Date: February 15, 2012**

**Docket No. 30,591**

**VILLAGE OF RUIDOSO,**

      **Plaintiff-Appellee,**

**v.**

**DAVID WARNER,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Jerry Ritter Jr., District Judge**

Bryant, Schneider-Cook Law Firm, P.A.
Daniel A. Bryant
Angie K. Schneider-Cook
Ruidoso, NM

for Appellee

David Warner, Pro Se
Ruidoso, NM

Pro Se Appellant

**OPINION**

**SUTIN, Judge.**

**{1}** On behalf of a non-profit foundation that he created after the death of his son, Defendant David Warner stationed himself and his pickup truck in a public street intersection in the Village of Ruidoso, New Mexico. He handed out flyers that solicited funds to support his foundation. Posters in the bed of the truck identified the foundation and asked for donations. Defendant was arrested and convicted in municipal court of soliciting without a permit contrary to Ruidoso, N.M., Code of Ordinances ch. 58, art. III, § 58-84(b)

1

(1998). He appeals from a repeated conviction in a de novo appeal in the district court. He presents constitutional challenges to Section 58-84(b). We reverse Defendant's conviction.

**BACKGROUND**

**The Ordinance at Issue**

{2}     Section 58-84(b) reads:

> *Solicitation on public property.* The practice by itinerant vendors or solicitors of going onto public property for the purpose of soliciting money or for the sale of goods, wares[,] and merchandise or for the purpose of disposing of goods, wares[,] and merchandise shall be considered a nuisance and punishable under this Code, except as otherwise provided by law or authorized by the council.

Section 58-84 (use of streets, sidewalks, parks, and village-owned public property) is found under Article III (offenses against property) of Chapter 58 (offenses and miscellaneous provisions) of the Village's Code of Ordinances.

{3}     The parties consider three other Village ordinances to be related in the constitutional analyses. These ordinances are found in Division 2 (special licenses) under Article II (business registration and licenses) of Chapter 26 (businesses) of the Village's Code of Ordinances. Ruidoso, N.M., Code of Ordinances ch. 26, art. II, div. 2, § 26-62 (1998) (definitions) defines "solicitation" to include requesting contribution of funds for charitable or other noncommercial purposes. It defines "solicitor" as any person who engages in solicitation along "any streets[.]" Ruidoso, N.M., Code of Ordinances ch. 26, art. II, div. 2, § 26-75 (1998) (amended Jan. 26, 2010) (solicitation) makes it unlawful for any solicitor to engage in solicitation without first obtaining a license from the Village, but it exempts "[p]ersons, organizations[,] and other entities who are not otherwise required by the provisions of this article to obtain business registrations and/or licenses[.]" Section 26-75(b)(2) (1998) (prior to 2010 amendment). And Ruidoso, N.M., Code of Ordinances ch. 26, art. II, div. 2 § 26-77 (1998) (fundraising events by non-profit organizations) sets out criteria under which outdoor fundraising activity by a non-profit organization can be conducted. Criteria applicable to Defendant's activity include "submit[ting] an application supplied by the village clerk[,]" providing documentation of not-for-profit status, and obtaining permission from "the administering agency" (e.g., school, village, county, federal, or state agency) if the activity is held on public property. Section 26-77(2), (4), (5). None of these ordinances refers to Section 58-84(b). We see nothing in the record that indicates that either the municipal court or the district court considered these other ordinances when convicting Defendant for violating Section 58-84(b).

{4}     Defendant requests this Court to rule that Section 58-84(b) alone or in combination with Sections 26-62, 26-75, and 26-77 suffers from facial and as-applied constitutional

2

deficiencies, naming the facial culprits overbreadth, prior restraint, and vagueness. It appears from the briefs on appeal that, in pursuit of the issue of the constitutional validity of Defendant's conviction under Section 58-84(b), the parties believe that all of these sections are to be read together as one regulatory scheme.

**Applicable General Principles**

**{5}**     Our analysis of the facial invalidity of statutes and ordinances[1] prohibiting content-neutral speech in public places essentially considers how substantial, broad, and chilling the prohibition is, sometimes involving concerns about unbridled government official discretion and prior restraint. In a facial challenge to an ordinance, we consider only the text of the ordinance itself, not its application; whereas, in an as-applied challenge, we consider the facts of the case to determine whether application of the ordinance even if facially valid deprived the challenger of a protected right. *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 174-75 (2d Cir. 2006).

**{6}**     "According to our First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008); *State v. Ebert*, 2011-NMCA-098, ¶ 6, 150 N.M. 576, 263 P.3d 918. The concept of overbreadth is applicable to invalidate ordinances that fail to serve "legitimate interests [through] narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms." *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 637 (1980). The overbreadth doctrine is also applied to invalidate ordinances restricting speech that do not include reasonable restrictions based on time, place, and manner of communicating information. *See, e.g.*, *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 59 n.17 (1976) (collecting cases that entertained facial overbreadth claims "where statutes, by their terms, purport to regulate the time, place, and manner of expressive or communicative conduct"); *Grayned v. City of Rockford*, 408 U.S. 104, 114-15 (1972) (stating that an ordinance, even if clear and precise, "may nevertheless be overbroad if in its reach it prohibits constitutionally protected conduct" and "that reasonable, time, place[,] and manner regulations may be necessary to further significant governmental interests, and are permitted" (internal quotation marks omitted)).

**{7}**     In some instances, the concept of void for vagueness is applicable to ordinances that restrict speech. *See, e.g.*, *Grayned*, 408 U.S. at 109 ("[W]here a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms." (alterations omitted) (internal quotation marks and footnotes with citations omitted)); *see also Coates v. City of Cincinnati*, 402 U.S. 611, 611, 614 (1971) (holding an

---

[1]     Statutes and ordinances are treated the same in cases addressing the constitutionality of laws restricting First Amendment speech. In this Opinion, because this case involves ordinances, unless "statute" appears in quoted material, we use "ordinance" throughout even though several of the cited cases deal with statutes.

ordinance prohibiting, among other things, "conduct . . . annoying to persons passing by" to be "unconstitutionally vague because it subjects the exercise of the right of assembly to an unascertainable standard," to be vague "in the sense that no standard of conduct is specified at all[,]" and also to be "unconstitutionally broad because it authorizes the punishment of constitutionally protected conduct").

**{8}** In addition, the concept of prior restraint has also been applied in a First Amendment context. *See Young*, 427 U.S. at 59 n.17 (collecting cases that entertained facial overbreadth claims where expressive or communicative "conduct has required official approval under laws that delegated standardless discretionary power to local functionaries, resulting in virtually unreviewable prior restraints on First Amendment rights"); *cf. Cantwell v. Connecticut*, 310 U.S. 296, 306 (1940) (involving an invalid prior restraint on the free exercise of religion); *see also Vill. of Schaumburg*, 444 U.S. at 629 (noting that, following the *Cantwell* decision, the Court "understood *Cantwell* to have implied that soliciting funds involves interests protected by the First Amendment's guarantee of freedom of speech").

**{9}** The ordinances in question are content neutral. *See, e.g.*, *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002) (discussing the distinction between "subject-matter censorship [and] content-neutral time, place, and manner regulation of the use of a public forum"). Content-neutral regulation of protected speech may survive constitutional attack if the regulation is made subject to reasonable time, place, and manner restrictions. *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984) (stating, in the context of content-neutral park service regulations relating to demonstrations, that "[e]xpression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions"); *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943) ("[T]he peace, good order, and comfort of the community may imperatively require regulation of the time, place[,] and manner of distribution [of literature]."); *Cox v. New Hampshire*, 312 U.S. 569, 576 (1941) (indicating that "[i]f a municipality has authority to control the use of its public streets for parades or processions, as it undoubtedly has, it cannot be denied authority to give consideration, without unfair discrimination, to time, place[,] and manner in relation to the other proper uses of the streets"); *cf. City of Farmington v. Fawcett*, 114 N.M. 537, 540, 843 P.2d 839, 842 (Ct. App. 1992) (stating, in the context of free speech under the New Mexico Constitution on the issue of prior restraint, related to an ordinance criminalizing dissemination of obscene material, that "our [S]upreme [C]ourt has recognized that the state may constitutionally regulate the place and manner of such speech"). Still, through "unduly broad discretion" enjoyed by officials in the permitting process, "even content-neutral time, place, and manner restrictions can be applied in such a manner as to stifle free expression." *Thomas*, 534 U.S. at 323. The regulation must "contain adequate standards to guide the official's decision and render it subject to effective judicial review." *Id.* And, "in order to constitute a legitimate time, place, and manner restriction . . . the restriction on speech must . . . serve a significant governmental interest, and . . . in so doing, . . . must leave open ample alternative channels for communication of the information." *Stuckey's Stores, Inc. v. O'Cheskey*, 93 N.M. 312, 318, 600 P.2d 258, 264 (1979) (internal quotation marks and citation omitted).

4

**{10}** We apply an intermediate level of scrutiny to content-neutral ordinances that restrict speech. *Turner Broad. Sys., Inc. v. Fed. Commc'ns Comm'n*, 512 U.S. 622, 642 (1994) (citing *Clark*, 468 U.S. at 293). Under that scrutiny, the restrictions in the ordinance must be narrowly tailored to serve a significant or substantial governmental interest without unnecessarily interfering with First Amendment freedoms and must "leave open ample alternative channels for communication of the information." *Clark*, 468 U.S. at 293; *Vill. of Schaumburg*, 444 U.S. at 637; *Am. Target Adver., Inc. v. Giani*, 199 F.3d 1241, 1247 (10th Cir. 2000).

**Preliminary Preservation Question**

**{11}** In the district court, Defendant broadly asserted that his First Amendment rights were violated and that Section 58-84(b) was void for vagueness. The district court expressed disagreement with Defendant's void-for-vagueness assertion but noted that Defendant raised the issue. The record proper in this Court shows that in the municipal court proceedings Defendant argued that charitable solicitations qualified as protected speech under the First Amendment, that the Village's content-neutral Section 58-84(b) regulation of the solicitations was subject to intermediate scrutiny, and that although government can impose reasonable restrictions of time, place, and manner of protected speech, narrowly tailored to serve a significant governmental interest, the Village "lacked specific instructions or procedures set in place by which a non-profit organization would apply for and obtain a license or permit to request donations." In the municipal court proceedings, Defendant cited several cases that set out the constitutional guidelines related to Defendant's arguments, two of which were *Vill. of Schaumburg*, 444 U.S. at 637 (addressing overbreadth), and *Am. Target Adver.*, 199 F.3d at 1246-53 (addressing intermediate scrutiny of content-neutral regulation of fundraising activity, facial challenge and narrow-tailoring requirements, prior restraint, and unbridled discretion). Thus, the constitutional issues appear to have been contained in the district court record.

**{12}** The record does not reflect that the district court addressed First Amendment issues. Because Defendant failed to argue First Amendment issues with any specificity, we cannot fault the district court if it did not specifically address them. Nevertheless, for the following reasons, we will address the First Amendment issues that Defendant has raised on appeal: (1) Defendant raised the issues in municipal court and the issues were part of the district court record; (2) the Village has not argued any lack of preservation and has addressed the constitutional issues in its answer brief on appeal; and (3) colorable First Amendment challenges to content-neutral ordinances that do not contain standards of time, place, and manner of communication restrictions on protected speech should be heard on appeal even though the challenges were not clearly preserved in the district court. *See State v. Laguna*, 1999-NMCA-152, ¶¶ 18-23, 128 N.M. 345, 992 P.2d 896 (reviewing a constitutional void-for-vagueness challenge despite lack of preservation).

**DISCUSSION**

**{13}** We review the constitutional issues raised by Defendant de novo. *See Christus St. Vincent Reg'l Med. Ctr. v. Duarte-Afara*, 2011-NMCA-112, ¶ 21, 267 P.3d 70, *cert. quashed, 2012-NMCERT-005, ___ P.3d ___ (No. 33,166, May 24, 2012)*. There is a presumption that municipal ordinances are constitutional. *City of Albuquerque v. Jones*, 87 N.M. 486, 488, 535 P.2d 1337, 1339 (1975); *Fawcett*, 114 N.M. at 540, 843 P.2d at 842. The challenger has the burden to establish that an ordinance is unconstitutionally invalid. *See Jones*, 87 N.M. at 488, 535 P.2d at 1339; *see also State v. Ball*, 104 N.M. 176, 178, 718 P.2d 686, 688 (1986) ("It is the duty of [an appellate court] to uphold statutes [and ordinances] unless it is satisfied beyond all reasonable doubt that the [legislative body] went outside the Constitution in enacting the challenged legislation."). We are to uphold the ordinance at issue here unless otherwise satisfied beyond all reasonable doubt that it is outside the Constitution. *Fawcett*, 114 N.M. at 540, 843 P.2d at 842.

**Observations Regarding the Ordinances**

**{14}** Section 58-84 is titled "Use of streets, sidewalks, parks[,] and village-owned public property[,]" and Subpart (b) specifically relates to solicitation on public property. Unless otherwise provided by law or authorized by the Village council, Section 58-84(b) by itself unqualifiedly criminalizes as a nuisance a practice by an itinerant solicitor "of going onto public property" to solicit money. As it plainly reads, Section 58-84(b) criminally prohibits a non-profit organization's charitable solicitation of funds orally or by use of leaflets and posters at any time, in any public place, and in any manner. Thus, unless other law or Village council authorization saves this clear First Amendment infringement, Section 58-84(b) cannot pass constitutional scrutiny. *See City of Ladue v. Gilleo*, 512 U.S. 43, 55 (1994) (collecting "prior decisions [that] voiced particular concern with laws that foreclose an entire medium of expression"); *Martin*, 319 U.S. at 147 ("The dangers of distribution [of literature] can so easily be controlled by traditional legal methods . . . that stringent prohibition can serve no purpose but that forbidden by the Constitution, the naked restriction of the dissemination of ideas."); *Jamison v. Texas*, 318 U.S. 413, 416 (1943) ("The right to distribute handbills concerning religious subjects on the streets may not be prohibited at all times, at all places, and under all circumstances."); *Schneider v. New Jersey*, 308 U.S. 147, 163-65 (1939) (holding that regulations embodied in various ordinances abridged the freedom of speech and press); *Lovell v. City of Griffin*, 303 U.S. 444, 450-51 (1938) (holding an ordinance facially unconstitutional because of its "broad sweep" prohibiting "the distribution of literature of any kind at any time, at any place, and in any manner").

**{15}** As we have indicated earlier in this Opinion, the parties treat Sections 26-62, 26-75, and 26-77 as related to Section 58-84(b). The question is whether these ordinances come within the phrase "except as otherwise provided by law or authorized by the council." Section 58-84(b). Section 26-62 appears intended to define "solicitation" and "solicitor" that appear in Section 58-84(b). We understand the parties to argue that this definitional provision applies in the application of Section 58-84(b). Thus, Section 26-62 includes within the definition of "solicitation," presumably as it is applied in Section 58-84(b), "requesting contribution of funds . . . for political, charitable, religious[,] or other

6

noncommercial purposes." Section 26-62. Section 26-62 also includes within the definition of "solicitor," presumably as it is applied in Section 58-84(b), "any person . . . along any streets within the [V]illage conducting solicitation." Section 26-62. Assuming these definitions apply to Section 58-84(b), that section covers Defendant's charitable fundraising activity and brings that activity within the proscription of Section 58-84(b). Section 26-62 does not relieve Section 58-84(b) of its constitutional defect.

**{16}** Section 26-75(a) appears intended, at first glance, to place a restriction on "solicitation" and "solicitor" in Sections 58-84(b) and 26-62 by making unlawful any solicitation by a solicitor without first obtaining a license from the Village. Section 26-75(b)(2) (1998) (prior to 2010 amendment) exempts solicitors from the license requirement as long as the solicitors are not required under another section to obtain a business registration or license. Because those who engage in requesting contributions for charitable purposes are not required to obtain a business registration or license, Defendant was presumably exempt from the license requirement. Like Section 26-62, Section 26-75 does not relieve Section 58-84(b) of its constitutional defect.

**{17}** Section 26-77 appears intended to allow a non-profit organization to engage in outdoor fundraising activity on public property under the specific requirements, called criteria, set out in the section. This section does not mention "solicitation" or "solicitor." Among the criteria for engagement in outdoor fundraising activity are that the organization must "submit an application supplied by the [V]illage clerk[,]" must provide documentation of its non-profit status, and "[i]f the activity is to be held on public property, permission must be granted from the administering agency, such as but not limited to school, village, county, federal[,] or state agencies." Section 26-77(2), (4), (5). Further, under Section 26-77(6), "[d]uration of the fundraiser is limited to five consecutive days." Thus, in the present case, assuming that Section 26-77 is to be considered a law narrowing the proscriptive scope of Section 58-84(b), Section 58-84(b)'s proscription will not be enforced against someone in Defendant's circumstance as long as that person files an application provided by the Village, files documentation showing its non-profit status, and is given permission by the Village to engage in the fundraising activity, which can be no longer than five consecutive days in duration. The arresting officer testified that he recommended to Defendant that if he got a permit, the citation would probably be dismissed. Notwithstanding this testimony, it is notable that neither the record nor the briefs reflect whether an application form existed for anyone to use to obtain a permit, what information an application required, or what standards were to be considered in granting or withholding permission for a non-profit organization to engage in fundraising. Considering Sections 58-84(b) and 26-77 together as the Village's attempt to regulate the time, place, and manner of solicitation by a non-profit organization for charitable purposes in a public place, the following picture emerges of the coverage of the sections in relation to Defendant's solicitation conduct on behalf of his non-profit organization and of the constitutional status of his conviction.

**{18}** Section 58-84(b) outright proscribes any solicitation whatsoever of funds for charitable purposes, "except as otherwise provided by law or authorized by the council."

Sections 26-62 and 26-75 add nothing to our constitutional analysis. Section 26-77 can arguably be considered a law that the Village intended as limiting the breadth to Section 58-84(b). Read in that manner, the two sections might be interpreted as implying that the solicitation flatly proscribed in Section 58-84(b) would nevertheless be allowed if the criteria set out in Section 26-77 were met. We gather from the Village's arguments on appeal that it intends this interpretation. Based on the interplay of Sections 58-84(b) and 26-77, it is reasonable to conclude that, under that two-ordinance regulatory scheme, Defendant was prohibited from soliciting funds on behalf of his non-profit organization unless he first completed an application supplied by the Village, submitted it to the Village, and then obtained permission from the Village to engage in the fundraising activity.

**Constitutional Analysis**

{19}    The diagnosis is not one of constitutional health but instead of constitutional infirmity. As we indicated earlier in this Opinion, without Section 26-77, Section 58-84(b) is clearly facially unconstitutional, unless a law or authority provides otherwise, because Section 58-84(b) outright prohibits all solicitation of money at any time, at any place, and in any manner.

{20}    Even with Section 26-77 at its side, however, Section 58-84(b) is facially unconstitutional. The regulatory scheme comprised of Sections 58-84(b) and 26-77 still broadly prohibits solicitation of money at any time, at any place, and in any manner unless a permit from the Village is obtained. This regulation does not save the infirmity of the ordinances. We understand the Village to argue that solicitation is not prohibited but rather that the ordinances "merely require a permit prior to solicitation and are designed to provide the Village with notice of time, place, and manner of presentation so that public health[,] safety[,] and welfare concerns can be addressed." However, there exists nothing in the record to indicate whether any particular form of application actually exists; nothing to indicate what is required in the application, if it does exist; nothing to indicate who is responsible for granting or denying permission; and nothing to indicate by what standards permission will be granted or denied. Nothing in the ordinances or in the record reflects the existence of any limitation on discretion, or any time, place, or manner of solicitation regulation.

{21}    Thus, the scheme facially and unconstitutionally prohibits activity without obtaining a permit, the issuance of which rests in what appears from the lack of evidence to the contrary to be unbridled discretion of public officials. *See Vill. of Schaumburg*, 444 U.S. at 628-29 (characterizing *Schneider*'s analysis as "holding that the city could not . . . subject . . . communication of views to the discretionary permit requirement"); *Schneider*, 308 U.S. at 164-65 (holding an ordinance void in requiring a permit to disseminate information where the police had discretion to allow some persons to act and not others). Furthermore, the regulatory scheme before us does not "constitute[] a reasonable time, place, and manner restriction on [Defendant's] exercise of protected First Amendment Rights[,]" nor did the Village sustain its "burden . . . to show the validity of [any significant governmental interest]

and the absence of less intrusive alternatives." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 656, 658 (1981) (Brennan, J., concurring in part and dissenting in part, citing *Schneider*). The scheme at hand is "demonstrably overbroad" and lacks essential "precision of drafting and clarity[.]" *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216-17 (1975); *see also Young*, 427 U.S. at 59 n.17 (discussing cases involving claims of facial overbreadth, which include entertainment of the claims "where statutes, by their terms, purport to regulate the time, place, and manner of expressive or communicative conduct," and "where such conduct has required official approval under laws that delegated standardless discretionary power to local functionaries, resulting in virtually unreviewable prior restraints on First Amendment rights"). The scheme utterly fails to pass the test of intermediate scrutiny, a test that requires the governmental regulator to show where

> [e]xpression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions. . . . [R]estrictions of this kind are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.

*Clark*, 468 U.S. at 293; *see also Turner Broad. Sys.*, 512 U.S. at 642 (stating that "regulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny," citing *Clark*, 468 U.S. at 293). And the scheme "subject[s] the exercise of First Amendment freedoms to the prior restraint of a [permit]" and has built in no protection of protected speech against "the uncontrolled will of an official—as by requiring a permit . . . which may be granted or withheld in the discretion of such official." *Am. Target Adver.*, 199 F.3d at 1252 (internal quotation marks and citations omitted). Moreover, the Village presented no evidence showing that the solicitation regulations are narrowly tailored to serve a substantial, significant governmental interest, nor any evidence that the restriction leaves open ample alternative channels for communication of the information Defendant sought to give to the public.

{22}    Based on our holding that the ordinances in question are facially invalid abridgments of First Amendment speech, we deem it unnecessary to address Defendant's as-applied and void-for-vagueness arguments.

**CONCLUSION**

{23}    We reverse Defendant's conviction.

{24}    **IT IS SO ORDERED.**

_____
 **JONATHAN B. SUTIN, Judge**

9

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**


_____

**CYNTHIA A. FRY, Judge**

**Topic Index for _Village of Ruidoso v. Warner_, 30,591**

**AE**      **APPEAL AND ERROR**
AE-PA      Preservation of Issues for Appeal
AR-SR      Standard of Review


**CT**      **CONSTITUTIONAL LAW**
CT-FS      Freedom of Speech
CT-PS      Prior Restraint
CT-VO      Vague or Overbroad


**CL**      **CRIMINAL LAW**
CL-SL      Solicitation


**GV**      **GOVERNMENT**
GV-MU      Municipalities
GV-OR      Ordinances
GV-ZL      Zoning Law