882 P.2d 22

STATE of New Mexico,
Plaintiff–Appellee,

v.

Milne J. ONGLEY, Defendant–Appellant.

No. 14836.

Court of Appeals of New Mexico.

June 2, 1994.

Tom Udall, Atty. Gen., Susan Sullivan, Asst. Atty. Gen., John Utton, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Dan Cron, Rothstein, Donatelli, Hughes, Dahlstrom, Cron & Schoenburg, Santa Fe, for defendant-appellant.

## OPINION

FLORES, Judge.

Defendant appeals from the judgment and sentence entered after a jury verdict sentencing him on one count of practicing medicine without a license. *See* NMSA 1978, §§ 61–6–6(J)(5), –20 (Repl.Pamp.1993). On appeal, he argues that: (1) the statute prohibiting the practice of medicine without a license violates his right to freedom of speech as guaranteed by Amendment I to the United States Constitution and Article II, Section 17 of the New Mexico Constitution; (2) his conviction should be reversed because the State engaged in prosecutorial misconduct; (3) his conviction is not supported by substantial evidence; (4) his right to a fair and impartial jury was violated; and (5) the doctrine of cumulative error requires reversal of his conviction. We discuss only the first issue in the published portion of this opinion. Our discussion of the other issues is not published. We affirm.

### Facts

On May 4 and 5, 1991, The American Academy of Neural Therapy presented a seminar entitled "A New Approach to the Treatment of Chronic Low Back and Neck Pain" at the Picacho Hotel in Santa Fe. A brochure advertising the seminar indicated that a portion of the seminar would be a demonstration of injection techniques, and further indicated that "[t]reatments will be demonstrated on Dr. Klinghardt's current patients. If you wish to bring one of your difficult 'cases' for treatment, please let us know in advance." The instructors for the seminar were Dr. Dietrich Klinghardt, a physician licensed in New Mexico, and Defen-

dant. It was undisputed below that Defendant is not licensed to practice medicine in the State of New Mexico.

During the first day of the seminar, Dr. Klinghardt and Defendant each lectured. Following the lectures, Defendant demonstrated diagnostic and therapeutic techniques, including injection techniques on various volunteers. The testimony at trial indicated that Defendant performed twenty-five to fifty separate injections on each of four subjects. These injections included injections into the knees, posterior neck, lower back, and pelvic area. The material injected into the volunteers was the subject of some dispute at trial. The State contended that the volunteers were injected with the "Ongley solution," which included dextrose, glycerin, phenol, pyrogen-free water, and lidocaine. Defendant contended that the subjects were injected with saline solution. On May 5, 1991, the State filed a criminal complaint against Defendant, charging him with practicing medicine without a license. A second criminal complaint was filed against Dr. Klinghardt, charging him with aiding and abetting the practice of medicine without a license.

Defendant moved to dismiss the complaint, arguing, inter alia, that his remarks and conduct at the seminar were constitutionally protected by his right to freedom of speech. The trial court, after an evidentiary hearing, ruled that Defendant's lecture during the seminar was constitutionally protected speech but that the injection of volunteer subjects was not entitled to the protection of the First Amendment.

### Freedom of Speech

Defendant contends that his actions with respect to the volunteer subjects, including the giving of injections, was expressive conduct that is protected by the First Amendment, and thus that the statute prohibiting the practice of medicine without a license, as applied to him, violates his rights under the First Amendment to the United States Constitution. Yet, even if we assume that Defendant's actions are entitled to some First Amendment protection, we hold that the statute does not impermissibly encroach on Defendant's First Amendment right to freedom of speech.

In addition, Defendant argues that we should consider whether Article II, Section 17 of the New Mexico Constitution provides broader protection than the United States Constitution. He contends that this issue was raised below by his citation to the relevant sections of the New Mexico Constitution. We do not agree. Defendant did not specifically argue below that the New Mexico Constitution provided a broader degree of protection than the United States Constitution, as he now argues on appeal. As this Court has previously stated, "[r]eferences to the state constitution, without some discussion or argument concerning the scope of its protections, are not enough to alert the trial court to the issue of a possible difference between the rights afforded by the state constitution and those provided by the [federal constitution]." *State v. Sutton*, 112 N.M. 449, 454, 816 P.2d 518, 523 (Ct.App.), *cert. denied*, 112 N.M. 308, 815 P.2d 161 (1991). Thus, we hold that Defendant has not properly preserved this issue for appeal. Even if Defendant had properly preserved this issue, we would be inclined to affirm because applicable precedents have determined that the protection of the federal and state constitutions are the same, at least with respect to content-neutral restrictions. *See Temple Baptist Church, Inc. v. City of Albuquerque*, 98 N.M. 138, 146, 646 P.2d 565, 573 (1982); *Stuckey's Stores, Inc. v. O'Cheskey*, 93 N.M. 312, 318, 600 P.2d 258, 264 (1979), *appeal dismissed*, 446 U.S. 930, 100 S.Ct. 2145, 64 L.Ed.2d 783 (1980).

Turning to our discussion of the First Amendment, we note at the outset that there is no contention before this Court that the provisions of the Medical Practice Act (the Act), NMSA 1978, §§ 61–6–1 to –35 (Repl. Pamps.1989 & 1993), would apply to the lectures given by Defendant during the seminar. Instead, the issues before this Court concern Defendant's conduct with respect to the volunteer subjects, including the giving of the injections. In the instant case, we are concerned not with pure speech, but with, at best, expressive conduct that may be entitled to some First Amendment protection. Simi-

larly, Defendant does not argue that the statute prohibiting the unlicensed practice of medicine restricts free expression based on the content of what is expressed. Thus, in the language of First Amendment analysis, we are dealing with content-neutral state law.

The United States Supreme Court has long recognized that certain forms of symbolic expression of ideas are entitled to First Amendment protection. *See, e.g., Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (obscuring state motto on license plate when the owner of the vehicle objected to the motto on political, moral, and religious grounds); *Tinker v. Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (wearing of black armbands to school to protest the war in Vietnam); *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (recognizing that burning a draft card as part of a demonstration against the draft may be entitled to some First Amendment protection); *West Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) (saluting the American flag is a form of symbolic speech).

Defendant argues the giving of injections during the seminar is expressive conduct because it was intended to be a hands-on demonstration of the techniques of proliferant therapy, and because those who viewed the conduct understood it as a demonstration and valued the demonstration portion of the seminar. Assuming that Defendant's conduct was sufficiently expressive to be entitled to some First Amendment protection, we nevertheless affirm Defendant's conviction.

In *O'Brien,* the Supreme Court held that state regulation of conduct that is entitled to some First Amendment protection will nevertheless be constitutional if it passes a four-part test:

■ if it is within the constitutional power[s] of the [g]overnment; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms

is no greater than is essential to the furtherance of that interest.

391 U.S. at 377, 88 S.Ct. at 1679. Over the years, the *O'Brien* test has been characterized as essentially the same standard applied to time, place, and manner restrictions. *See Ward v. Rock Against Racism,* 491 U.S. 781, 797–98, 109 S.Ct. 2746, 2757, 105 L.Ed.2d 661 (1989); *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 298, 104 S.Ct. 3065, 3071, 82 L.Ed.2d 221 (1984); *see also Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 565–66, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504 (1991) (plurality opinion).

■ The first three criteria of the *O'Brien* test are not at issue in this case. As we previously noted, Defendant concedes that the statute prohibiting the practice of medicine without a license is content-neutral. It is well settled that the states may constitutionally regulate the practice of medicine and similar healing professions. *See Douglas v. Noble,* 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590 (1923); *Watson v. Maryland,* 218 U.S. 173, 30 S.Ct. 644, 54 L.Ed. 987 (1910); *Dent v. West Virginia,* 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889). Additionally, Defendant implicitly concedes that the regulation of the practice of medicine furthers an important or substantial governmental interest.

However, Defendant argues strenuously that the Act imposes greater restrictions on First Amendment freedoms than are essential to the furtherance of the government's interest. He makes two arguments. First, he argues that the licensing requirement is not a narrowly tailored means of protecting the government's interest in the seminar because the State has failed to show that its interest in the participation of non-resident physicians in the seminar is different in kind or degree from its interest in the participation of resident physicians or of others who are granted exemptions to the licensing requirement. Second, with respect to the use of criminal sanctions to enforce the Act, Defendant contends that the State had other, more effective means of enforcement of the Act available to it, specifically persuasion or an injunction. The State contends that to the extent the Act imposes some incidental burden on First Amendment rights, the bur-

**434**

den was no greater than essential in further-ance of the State's interest. In addition, it contends that Defendant's argument con-cerning the use of criminal sanctions amounts to a contention that the State must show that it has used the least restrictive means available to protect its interest, a posi-tion that the Supreme Court has rejected. *See Board of Trustees v. Fox,* 492 U.S. 469, 478–79 n. 3, 109 S.Ct. 3028, 3034 n. 3, 106 L.Ed.2d 388 (1989); *Ward,* 491 U.S. at 798–99 & n. 6, 109 S.Ct. at 2757–58 & n. 6; *Clark,* 468 U.S. at 299, 104 S.Ct. at 3072.

■ We agree with the State that Defen-dant's argument is an incorrect attempt to impose a "least restrictive means" test into the law. As we see it, the true test is only whether the restrictions imposed on free ex-pression by the Act are greater than neces-sary to further the State's interest in ensur-ing that only qualified persons practice medi-cine within its borders. We think that the restrictions imposed on free expression by the Act are minimal. The Act leaves open numerous alternative channels of communica-tion for Defendant to express his ideas and opinions concerning effective treatment for various diseases or conditions. As Professor Tribe has paraphrased the Supreme Court's test, "[A] regulation is constitutional, even as applied to expressive conduct, so long as it does not unduly constrict the flow of informa-tion and ideas." Laurence H. Tribe, *Ameri-can Constitutional Law* 792 (2d ed. 1988). The Act does not purport to regulate the expression of ideas or opinions concerning effective treatments or other issues of public concern, nor does it require all speakers at seminars held in New Mexico to be licensed to practice in New Mexico. The Act simply requires those who engage in conduct in New Mexico that amounts to the practice of medi-cine to obtain a New Mexico license. In short, any burden on the exercise of Defen-dant's First Amendment rights is at best minimal and incidental, and the Act leaves open alternative channels of communication through which Defendant can express his ideas and opinions.

Defendant's argument misapprehends the interests at stake. Defendant was convicted for practicing medicine without a license,

based on his actions with respect to the volunteer subjects, including the giving of a series of injections. The State's interest in such conduct is set forth in the Act, which identifies its purpose as "to protect the public from the improper, unprofessional, incompe-tent and unlawful practice of medicine" by establishing "laws and regulations controlling the granting and use of the privilege to prac-tice medicine and to establish a board of medical examiners to implement and enforce those laws and regulations." Section 61–6–1(B). Insofar as is pertinent to this case, the Act defines the practice of medicine as "of-fering or undertaking to diagnose, correct or treat in any manner or by any means, meth-ods, devices or instrumentalities any disease, illness, pain, wound, fracture, infirmity, de-formity, defect or abnormal physical or men-tal condition of any person...." Section 61–6–6(J)(5). The question is not whether the State's interest in seminars conducted by physicians residing in New Mexico is differ-ent from its interest in seminars conducted by physicians who do not reside in New Mexico. Rather, the question is whether the State has a valid interest in ensuring that persons who practice medicine on persons within its borders are qualified to do so. We hold that it does.

We note that other jurisdictions dealing with this issue have come to the same conclu-sion. For instance, in *State Department of Health v. Hinze,* 232 Neb. 550, 441 N.W.2d 593 (1989), a case factually similar to the present one, the defendant was enjoined from the unlicensed practice of medicine. When the defendant appealed his conviction for practicing without a license at a medical seminar, the Nebraska Supreme Court held that "[a]ny infringement on [the defendant's] freedom of speech created by this injunction is, at most, incidental and is outweighed by this State's compelling interest in protecting the health and welfare of the citizens of Nebraska." *Id.* 441 N.W.2d at 598; *see also Shea v. Board of Medical Examiners,* 81 Cal.App.3d 564, 146 Cal.Rptr. 653, 662 (1978) (state's power to protect its citizens by regu-lating conduct of health professionals is well settled, and the First Amendment will not shield a "verbal charlatan" doctor from re-sponsibility for his conduct); *People v. Jef-fers,* 690 P.2d 194, 198 (Colo.1984) (en banc)

("The practice of medicine itself is not protected by the first amendment. Therefore, reasonable regulation of medical practice does not conflict with first amendment protections."); *People v. Ray,* 119 Ill.App.3d 180, 74 Ill.Dec. 677, 681, 456 N.E.2d 179, 183 (1983) (medical licensure statute did not infringe on rights of expression because it was "reasonably drawn to meet the State's compelling interest in regulation of the practice of medicine").

As for Defendant's argument that the State should have chosen some other enforcement mechanism than criminal prosecution, we find the argument ironic. The most disfavored means of suppressing speech has been an injunction. *See New York Times Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). In sum, we hold that Defendant's First Amendment rights have not been violated.

*Conclusion*

In summary, we hold that the Act as applied to Defendant did not violate Defendant's right to freedom of speech as guaranteed to him by the First Amendment to the United States Constitution. For these reasons and those given in the unpublished portion of this opinion, we affirm.

IT IS SO ORDERED.

HARTZ and PICKARD, JJ., concur.