**Certiorari Granted, December 6, 2012, No. 33,895**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-005**

**Filing Date: October 4, 2012**

**Docket No. 31,470**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**JOE T. GARCIA,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Thomas A. Rutledge, District Judge**

Gary K. King, Attorney General
Olga Serafimova, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**WECHSLER, Judge.**

**{1}** Defendant Joe Garcia appeals his conviction of contributing to the delinquency of a minor (CDM), a fourth degree felony, contrary to NMSA 1978, Section 30-6-3 (1990). We hold that (1) the State presented sufficient evidence to support Defendant's conviction; (2) the CDM statute did not violate Defendant's right to free expression under the federal and

state constitutions; (3) the CDM statute is not unconstitutionally overbroad under the First Amendment to the United States Constitution; (4) as a matter of due process, the CDM statute is not unconstitutionally vague; and (5) under the general/specific rule, the State was not required to charge Defendant for violating the statute prohibiting providing sexually oriented materials harmful to a minor (the sexual oriented materials statute) instead of CDM. Accordingly, we affirm.

## BACKGROUND

**{2}**    Defendant's conviction arose out of a handwritten, sexually explicit letter that Defendant's biological daughter, Y.G., found in her underwear drawer. Y.G. lived with her mother, Defendant, and her younger brother. Defendant had recently moved back into the house after a two-to-three year separation from Y.G.'s mother. Although they resided in the same house, Y.G. and Defendant did not speak to each other because she lost trust in Defendant and felt abandoned that he previously left the household.

**{3}**    On June 10, Y.G. left the house with her mother and two brothers, leaving Defendant alone in the house. Later that same day, Y.G.'s mother and Defendant left the house and Y.G. stayed home. Y.G. started looking for her cellular phone. When she looked in her underwear drawer, she found a handwritten letter containing a story entitled "I Just a Fantasy Story," which contained five pages describing various sexual acts between the writer, a male, and the reader, a female. Y.G. testified that she immediately recognized the handwriting in the letter to be that of Defendant's. She pretended that nothing had happened, returned to the living room with her cousins for that evening without saying anything, then spent the next day avoiding Defendant. She did not tell her mother until the next evening.

**{4}**    Based on the letter, the State charged Defendant with criminal solicitation to commit incest or, in the alternative, CDM. After a trial, the jury convicted Defendant of CDM. On appeal, Defendant argues that (1) the State presented insufficient evidence to support his conviction; (2) the CDM statute as applied in this case is a content-based regulation that violates Defendant's right to freedom of speech; (3) the CDM statute is unconstitutionally overbroad; (4) the CDM statute is unconstitutionally vague; and (5) under a general/specific analysis, the State was required to charge Defendant under the sexually oriented materials statute.

## SUFFICIENCY OF THE EVIDENCE

**{5}**    In order for the jury to convict Defendant of CDM, the State had to prove that

1.    . . . [D]efendant wrote a letter to his biological daughter . . . soliciting sexual acts, which was placed in [Y.G.'s] underwear drawer;

2.    This encouraged [Y.G.] to commit the offense of [i]ncest, or conduct

2

herself in [a] manner injurious to the morals or the health, or the welfare of [Y.G.];

3.      [Y.G.] was under the age of 18[.]

Defendant argues that there was insufficient evidence to support Defendant's conviction because the State submitted no evidence that it was Defendant who placed the letter in Y.G.'s drawer.

**{6}**      "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sena*, 2008-NMSC-053, ¶ 10, 144 N.M. 821, 192 P.3d 1198 (internal quotation marks and citation omitted). "[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Baca*, 1997-NMSC-059, ¶ 14, 124 N.M. 333, 950 P.2d 776 (internal quotation marks and citation omitted). We view the evidence in the light most favorable to, and indulge all inferences in favor of, the verdict. *Sena*, 2008-NMSC-053, ¶ 10; *State v. Sanders*, 117 N.M. 452, 456, 872 P.2d 870, 874 (1994). If there is substantial evidence supporting the verdict, we do not reweigh the evidence or substitute our judgment for that of the factfinder. *State v. Fuentes*, 2010-NMCA-027, ¶ 13, 147 N.M. 761, 228 P.3d 1181.

**{7}**      Although the State did not present any direct evidence that it was Defendant who placed the letter in Y.G.'s drawer, the State presented sufficient evidence for a reasonable factfinder to conclude that Defendant was the author of the letter, which leads to a reasonable conclusion that Defendant placed the letter in Y.G.'s drawer. Y.G. testified that she immediately recognized the handwriting in the letter to be that of Defendant's. The State also presented testimony from an expert handwriting analyst, who testified that the handwriting in the letter was Defendant's after comparing the letter to a sample of Defendant's writing. Further, the content of the letter provides clues that Defendant was its author. The letter begins "[s]ometimes when I'm thinking of you and wishing I was with you. I start imagining everything is all right [sic]. Like me walking into your room and your [sic] just their [sic] reading a book and we start talking." A reasonable inference from this opening is that the writer lives in the same house as Y.G. and does not have a good relationship with her. Combined with Y.G's testimony that she did not speak to Defendant, this evidence leads to an inference that Defendant wrote the letter. Further, the jury heard testimony that the police executed a search warrant on June 12, 2010, and in conducting a search of the home, found an envelope in Y.G.'s parents' bedroom with the writing "I Just a fantasy" on it.

**{8}**      The evidence that Defendant authored the letter, when combined with the evidence that Defendant was the only one of two males who lived in the house and was alone in the house on the day Y.G. found the letter, is sufficient circumstantial evidence for a reasonable factfinder to conclude that Defendant placed the letter in Y.G.'s drawer. *See Baca*, 1997-

3

NMSC-059, ¶ 14. Sufficient evidence therefore supported Defendant's conviction for CDM.

## CONSTITUTIONAL ISSUES

### Issue Raised at Oral Argument

**{9}** At oral argument, in framing his constitutional arguments, Defendant argued that the jury instruction stating the elements of CDM required that the State had to prove that Defendant "wrote a letter . . ., which was placed in [Y.G.'s] underwear drawer." Defendant contends that, because of the use of the passive voice in the jury instruction, the jury could have found that Defendant wrote the letter, but did not place it in Y.G.'s drawer, and still convict Defendant of CDM. However, Defendant did not object to the instruction in the district court and therefore did not preserve this issue. *See State v. Nichols*, 2006-NMCA-017, ¶¶ 26-30, 139 N.M. 72, 128 P.3d 500 (rejecting the defendant's argument that the broad time frame covered in jury instructions denied him due process because the defendant did not object to the instructions in order to preserve the issue). Defendant also waived this argument by failing to raise it in his brief in chief. *See State v. Triggs*, 2012-NMCA-068, ¶¶ 13-14, 281 P.3d 1256 (stating the general rule that this Court will not address arguments not raised in the brief in chief). Defendant argues that the issue need not be preserved because it implicates his constitutional rights. However, "[e]ven constitutional rights may be lost if not preserved below." *State v. Zamarripa*, 2009-NMSC-001, ¶ 33, 145 N.M. 402, 199 P.3d 846; *see also Nichols*, 2006-NMCA-017, ¶¶ 26-30 (declining to address the defendant's unpreserved constitutional arguments). We therefore proceed to address Defendant's constitutional arguments under the premise that the jury was required to find, and found, that Defendant not only wrote the letter, but also placed it in Y.G's drawer as argued below and in the briefing before this Court.

### Standard of Review

**{10}** Defendant makes three arguments that his conviction under the CDM statute violated his rights under the federal and state constitutions. He asserts that the CDM statute (1) is a content-based regulation that violates his rights to freedom of expression under the First Amendment of the United States Constitution and Article II, Section 17 of the New Mexico Constitution, (2) is unconstitutionally overbroad in violation of the First Amendment, and (3) is unconstitutionally vague and therefore violates Defendant's due process rights.

**{11}** We review each of Defendant's constitutional arguments under a de novo standard of review. *See State v. Ebert*, 2011-NMCA-098, ¶ 4, 150 N.M. 576, 263 P.3d 918 (reviewing the defendant's arguments that his conviction violated his rights under the First Amendment and that the statute was unconstitutionally vague under a de novo standard of review); *see also Vill. of Ruidoso v. Warner*, 2012-NMCA-035, ¶¶ 13, 22, 274 P.3d 791 (addressing an argument that an ordinance is overbroad under a de novo standard of review). "We presume that the statute is constitutional, and it is the defendant's burden to rebut this presumption[.]" *State v. Jacquez*, 2009-NMCA-124, ¶ 6, 147 N.M. 313, 222 P.3d 685

(citation omitted).

**Freedom of Expression**

**{12}** We first address Defendant's argument that the CDM statute is a content-based regulation that deprives him of his right to free expression under the federal and state constitutions. Defendant does not challenge the CDM statute facially, but instead argues that, as applied to his conviction arising out of writing and delivering the letter to Y.G., the CDM statute punishes protected expressive conduct. *See Vill. of Ruidoso*, 2012-NMCA-035, ¶ 5 ("In a facial challenge . . . , we consider only the text . . . itself, not its application; whereas, in an as-applied challenge, we consider the facts of the case to determine whether application . . . deprived the challenger of a protected right.").

**{13}** We must initially determine whether the CDM statute is content based in order to determine the constitutional framework under which to analyze Defendant's challenge. *See Ebert*, 2011-NMCA-098, ¶ 8 (applying strict scrutiny to a content-based prohibition); *State v. Ongley*, 118 N.M. 431, 433, 882 P.2d 22, 24 (Ct. App. 1994) (applying intermediate scrutiny to a challenge to a criminal statute that did not "restrict[] free expression based on the content of what is expressed"). Citing *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 811-12 (2000), Defendant argues that the CDM statute is content based because "the regulation of the prohibited conduct 'focuses *only* on the content of the speech and the direct impact that speech has on its listeners' [and] the [United States Supreme] Court has indicated that such an action 'is the essence of content-based regulation.'" "The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

**{14}** The CDM statute provides that

> [c]ontributing to the delinquency of a minor consists of any person committing any act or omitting the performance of any duty, which act or omission causes or tends to cause or encourage the delinquency of any person under the age of eighteen years.

Section 30-6-3. This statute makes no reference to the content of any speech or written expression and does not "distinguish favored speech from disfavored speech on the basis of the ideas or views expressed[.]" *Turner Broad. Sys., Inc. v. Fed. Commc'ns Comm'n*, 520 U.S. 180, 186 (1997) (internal quotation marks and citation omitted). There is no indication that it was adopted because of any disagreement with a particular message that a speaker conveys. Although, the CDM statute has been applied to various circumstances, some involving speech and some involving other conduct, the key to the statute is that it proscribes conduct only when the action "tends to cause or encourage the delinquency of" a minor. Section 30-6-3. In cases involving speech, the statute applies regardless of whether the communication is sexual in nature, as in this case, or whether it encourages minors to engage

5

in other delinquent activities, for example, "burglarizing homes and selling the property for cash and drugs." *State v. Barr*, 1999-NMCA-081, ¶ 2, 127 N.M. 504, 984 P.2d 185.

{15}    In this case, Defendant was not convicted solely based on the contents of the letter. The jury was instructed that it could convict Defendant only if the letter "encouraged [Y.G.] to commit the offense of [i]ncest, or conduct herself in [a] manner injurious to the morals or the health, or the welfare of [Y.G.]"  Therefore, the conviction did not arise out of the letter itself, but instead arose out of the action of delivering the letter to Y.G. and the effect of the letter, which was to encourage Y.G. to commit incest or act in a way injurious to her health or welfare.  Because the CDM statute's main function is to regulate *any* conduct that causes or tends to cause or encourage the delinquency of a minor regardless of the specific subject matter, the CDM statute is content neutral, and strict scrutiny does not apply.  *See Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001) ("[G]overnment regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech." (emphasis, internal quotation marks, and citation omitted)); *cf. Ebert*, 2011-NMCA-098, ¶ 8 (assuming without deciding that a statute prescribing "communications based on their sexual content" is a content-based prohibition).

{16}    Having determined that the CDM statute is content neutral, we apply intermediate scrutiny to the statute in determining whether it infringes on Defendant's freedom of expression.  *See Ongley*, 118 N.M. at 433, 882 P.2d at 24 (applying intermediate scrutiny to a challenge to a criminal statute that did not "restrict[] free expression based on the content of what is expressed").  "[U]nder the intermediate level of scrutiny applicable to content-neutral regulations, [a law will be] sustained if it [is] shown to further an important or substantial governmental interest unrelated to the suppression of free speech, provided the incidental restrictions [do] not burden substantially more speech than is necessary to further those interests."  *Turner Broad. Sys., Inc.*, 520 U.S. at 186 (internal quotation marks and citation omitted).  Although the New Mexico Constitution provides greater protection with respect to content-based restrictions, *see City of Farmington v. Fawcett*, 114 N.M. 537, 547, 843 P.2d 839, 849 (Ct. App. 1992), "the  protection of the federal and state constitutions are the same, at least with respect to content-neutral restrictions." *Ongley*, 118 N.M. at 432, 882 P.2d at 23.

{17}    We first turn to whether the CDM statute furthers an important or substantial governmental interest unrelated to the suppression of free speech.  *See Turner Broad. Sys., Inc.*, 520 U.S. at 186.  Defendant, citing *Brown v. Entm't Merchs. Assoc.*, ___ U.S. ___, 131 S. Ct. 2729, 2733-35, 2738 (2011), argues that "disgust is not a valid basis for restricting expression" and that "speech directed at children" is not a category of First Amendment protection.  However, the State's interest in enacting the CDM statute is not to criminalize disgust or to prevent children from hearing a particular message.  Generally, "[t]he purpose of the CDM statute is to protect children from harmful adult conduct."  *Barr*, 1999-NMCA-081, ¶ 17 (internal quotation marks and citation omitted).  This State's interest of protecting the well-being of minors is designed to protect children from "delinquency [based on w]hatever the community sense of decency and morality determines delinquency to be."

6

*State v. Trevino*, 116 N.M. 528, 532, 865 P.2d 1172, 1176 (1993). This interest "is addressed more to the mental and behavioral aspects of children than to their physical well-being." *Id.* at 532-33, 865 P.2d at 1176-77. The United States Supreme Court has held that protecting the mental well-being of children is not only a substantial governmental interest, it is compelling and satisfies strict scrutiny. *See New York v. Ferber*, 458 U.S. 747, 756-57 (1982) ("It is evident beyond the need for elaboration that a [s]tate's interest in safeguarding the physical and psychological well-being of a minor is compelling." (internal quotation marks and citation omitted)). We too consider the State's interest of protecting children from delinquency to be a substantial and important governmental interest, unrelated to the suppression of free speech.

**{18}** We next turn to whether CDM statute's "incidental restrictions [on speech] burden substantially more speech than is necessary to further those interests." *Turner Broad. Sys., Inc.*, 520 U.S. at 186 (internal quotation marks and citation omitted). Under the intermediate level of scrutiny, the restriction need not be a less-restrictive means of achieving the legitimate purpose. *See id.* at 217 (stating that the "less-restrictive-alternative analysis . . . has never been a part of the inquiry into the validity of content-neutral regulations on speech" and that "our cases establish that content-neutral regulations are not invalid simply because there is some imaginable alternative that might be less burdensome on speech" (internal quotation marks and citations omitted)). Defendant argues that the "definition of delinquency used by the [CDM] statute is sweeping" and "criminalizes vast amounts of protected speech because there is no definition of what speech is prohibited."

**{19}** However, the CDM statute is limited to circumstances that do not substantially burden more speech than necessary to further the interest of protecting children from delinquency. First, in order to convict the defendant of CDM, the defendant's actions must be directed toward a child. Second, the CDM has a causation requirement. In order for a defendant to be guilty of CDM, the speech must have "cause[d] or tend[ed] to cause or encourage" the minor to delinquency, meaning (1) to commit a crime, (2) to refuse to obey the reasonable and lawful commands or directions of a person who has lawful authority of the child, or (3) to conduct himself or herself in a manner injurious to his or her morals, health, or welfare. Section 30-6-3; UJI 14-601 NMRA. Although the definition of delinquency is broad, our Supreme Court has stated that "[t]he ways and means by which the venal mind may corrupt and debauch the youth of our land, both male and female, are so multitudinous that to compel a complete enumeration in any statute designed for protection of the young before giving it validity would be to confess the inability of modern society to cope with the problem of juvenile delinquency." *State v. McKinley*, 53 N.M. 106, 111, 202 P.2d 964, 967 (1949). The CDM statute does not burden more speech than necessary in order to fulfill its broad purpose of protecting children from delinquency.

**{20}** We note Defendant's reliance on *In re Douglas D.*, 2001 WI 47, 243 Wis. 2d 204, 626 N.W.2d 725. In *Douglas D.*, the Wisconsin Supreme Court held that the First Amendment prohibited prosecution under the state's disorderly conduct statute of a high school student who wrote a story for a creative writing assignment in which the student

7

beheaded the teacher. *Id.* ¶¶ 6, 9, 11, 39. However, the court held that the "First Amendment does not inherently bar the [s]tate from applying [the disorderly conduct statute] to unprotected speech, even if the unprotected speech is purely written speech." *Id.* ¶¶ 21, 25. The court held that the state can prosecute a defendant under the disorderly conduct statute when the speech at issue is considered "abusive" conduct, which includes "true threats" under the statute. *Id.* ¶¶ 25, 32. The court held that, in the context of a creative writing assignment and the hyperbole and jest contained in the defendant's story, the defendant could not be prosecuted because it was not a "true threat" for purposes of the statute and was therefore protected under the First Amendment. *Id.* ¶ 39.

**{21}** This case is distinguishable from *Douglas D.* In this case, Defendant's conviction did not arise solely from the content of Defendant's letter, but instead was premised on the effect of encouraging or tending to cause or encourage Y.G.'s delinquency. Defendant does not challenge the jury's finding in this regard. This case is therefore similar to a situation described in *Douglas D.*, in which a defendant's conduct does constitute a true threat and therefore is outside the realm of First Amendment protection. *See id.* ¶¶ 32-33. Defendant's conviction for CDM did not violate his First Amendment or New Mexico Constitution freedom of expression rights.

**Overbreadth**

**{22}** Defendant next argues that the CDM statute is unconstitutionally overbroad under the First Amendment. Particularly, Defendant argues that "New Mexico [c]ourts have construed 'delinquency' broadly, to include acts injurious to a minor's morals, health[,] or welfare." Therefore, Defendant contends that the CDM statute is overbroad because "it criminalizes vast amounts of protected speech because there is no definition of what speech is prohibited."

**{23}** A defendant may attack an overly broad statute "with no requirement that the [defendant] demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity[.]" *Gooding v. Wilson*, 405 U.S. 518, 520-21 (1972). Under the "First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech" beyond that needed to achieve the statute's proper purpose. *Vill. of Ruidoso*, 2012-NMCA-035, ¶ 6 (internal quotation marks and citation omitted). The United States Supreme Court has described the overbreadth doctrine as follows:

> The doctrine seeks to strike a balance between competing social costs. On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas. On the other hand, invalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects. In order to maintain an appropriate balance, we have vigorously

enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep. Invalidation for overbreadth is strong medicine that is not to be casually employed.

*United States v. Williams*, 553 U.S. 285, 292-93 (2008) (internal quotation marks and citations omitted).

**{24}** Defendant fails to satisfy his burden of showing that the CDM statute punishes a substantial amount of protected speech. Although Defendant argues that the definition of delinquency is "sweeping" and the CDM statute therefore covers "vast amounts of protected speech," Defendant fails to provide a single example of any type of protected speech that could lead to a conviction under the CDM statute. As we discussed in the context of Defendant's freedom of expression argument, the CDM statute is limited to circumstances that do not substantially burden protected speech because a conviction requires that a defendant's conduct encourage or tend to encourage a minor to (1) commit a crime, (2) refuse to obey the reasonable and lawful commands or directions of a person who has lawful authority of the child, or (3) conduct himself or herself in a manner injurious to his or her morals, health, or welfare. Section 30-6-3; UJI 14-601. Under these circumstances, any incidental infringement on protected speech is not substantial and subject to the "strong medicine" of invalidation. The CDM statute is not overbroad. *Williams*, 553 U.S. at 293; *see State v. James M.*, 111 N.M. 473, 478, 806 P.2d 1063, 1068 (Ct. App. 1990) (upholding the disorderly conduct statute from an overbreadth challenge because the statute only punished "fighting words" and therefore "avoid[ed] any punishment of speech that is protected [by] the [First Amendment]" (internal quotation marks omitted)).

**Void for Vagueness**

**{25}** Defendant also argues that the CDM statute is unconstitutionally vague and therefore violates his rights of due process under the law. Defendant particularly relies upon the broad definition of delinquency in our case law and the reliance on juries to determine what acts constitute CDM in each particular case. We analyze a claim of vagueness according to the particular facts of each case, *State v. Luckie*, 120 N.M. 274, 276, 901 P.2d 205, 207 (Ct. App. 1995), and a defendant may not succeed on a vagueness claim if the statute clearly applies to the defendant's conduct. *See State v. Laguna*, 1999-NMCA-152, ¶ 24, 128 N.M. 345, 992 P.2d 896. "A statute is void for vagueness if: (1) it fails to provide persons of ordinary intelligence using ordinary common sense a fair opportunity to determine whether their conduct is prohibited; or (2) it fails to create minimum guidelines for the reasonable police officer, prosecutor, judge, or jury charged with enforcement of the statute, and thereby encourages subjective and ad hoc application." *Jacquez*, 2009-NMCA-124, ¶ 6.

**{26}** Our Supreme Court has previously addressed Defendant's argument that the CDM statute is void-for-vagueness in *McKinley*. In *McKinley,* our Supreme Court upheld the CDM statute from a void for vagueness challenge in which the defendant argued that the

statute "is so vague, indefinite[,] and uncertain as to be incapable of interpretation and enforcement." 53 N.M at 109, 202 P.2d at 966. Our Supreme Court upheld the statute, reasoning that "[t]he common sense of the community, as well as the sense of decency, the propriety, and morality which most people entertain, is sufficient to apply the statute to each particular case, and point out what particular conduct is rendered criminal by it." *Id.* at 111, 202 P.2d at 967 (internal quotation marks and citation omitted). As set out earlier in this Opinion, the Court noted that "[t]he ways and means by which the venal mind may corrupt and debauch the youth of our land, both male and female, are so multitudinous that to compel a complete enumeration in any statute designed for protection of the young before giving it validity would be to confess the inability of modern society to cope with the problem of juvenile delinquency." *Id.*; *see also State v. Pitts*, 103 N.M. 778, 780, 714 P.2d 582, 584 (1986) ("This Court has held the [CDM] statute constitutional despite the vagueness of its description of the proscribed acts and omissions."). *McKinley* and *Pitts* control our disposition of the issue; and the CDM statute is not void for vagueness. *See State v. Wilson*, 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994) (holding that the Court of Appeals is bound by Supreme Court precedent).

**GENERAL/SPECIFIC**

**{27}** Defendant lastly argues that under a general/specific analysis, the State was required to charge Defendant under the sexually oriented materials statute, NMSA 1978, § 30-37-2 (1973), which criminalizes providing harmful sexually oriented materials to a minor. The general/specific statute rule, "to the extent that it requires prosecution under one statute instead of another, is connected with the principle of double jeopardy as it relates to multiple punishment for unitary conduct." *State v. Cleve*, 1999-NMSC-017, ¶ 22, 127 N.M. 240, 980 P.2d 23. The general/specific rule states that if one statute deals with a subject in general and comprehensive terms, and another statute addresses part of the same subject matter in a more specific manner, the latter controls. *Id.* ¶ 17. Our Supreme Court has stated that, in order for the rule to apply, "Courts should [apply the test enunciated in *Blockburger v. United States*, 284 U.S. 299 (1932), and] compare the elements of the two relevant crimes. If the elements of the two crimes are the same, the general/specific statute rule applies, and the prosecution must charge the defendant under the special law absent a clear expression of legislative intent to the contrary." *Cleve*, 1999-NMSC-017, ¶ 26. Examining whether the elements of the statutes differ requires statutory interpretation, an issue of law that we review de novo. *Id.* ¶ 7.

**{28}** The sexually oriented materials statute, Section 30-37-2, provides that

> It is unlawful for a person to knowingly sell, deliver, distribute, display for sale or provide to a minor, or knowingly to possess with intent to sell, deliver, distribute, display for sale or provide to a minor:
>
> A. any picture, photograph, drawing, sculpture, motion picture film or similar visual representation or image of a person or portion

10

of the human body, or any replica, article[,] or device having the appearance of either male or female genitals which depicts nudity, sexual conduct, sexual excitement[,] or sado-masochistic abuse and which is harmful to minors; or

B.     any book, pamphlet, magazine, printed matter however produced or sound recording which contains any matter enumerated in Subsection A of this section or explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct or sado-masochistic abuse and which, taken as a whole, is harmful to minors.

**{29}** Defendant concedes that the statutory elements of the CDM statute and the sexually oriented materials statute are not the same, but argues that the New Mexico Supreme Court expressly adopted a modified *Blockburger* analysis for claims involving statutes that are vague and unspecific. *See State v. Gutierrez*, 2011-NMSC-024, ¶ 48, 150 N.M. 232, 258 P.3d 1024. Indeed, in *Gutierrez*, our Supreme Court determined that courts should look to the legal theory advanced by the state when applying the *Blockburger* analysis. *Gutierrez*, 2011-NMSC-024, ¶¶ 56-59.

**{30}** Defendant argues that in this case "the legal theory is that by writing a sexually explicit letter which was placed in [Y.G.]'s underwear drawer, [Defendant] encouraged her to conduct herself in [a] manner injurious to the morals or the health, or the welfare of [Y.G.]" (third alteration in original). Defendant contends that this legal theory "duplicates the elements of the [s]exually [o]riented [m]aterials . . . statute[,]" which contains three elements: (1) knowingly providing to a minor (2) explicit and detailed narrative accounts of sexual excitement (3) which, taken as a whole, is harmful to minors. Section 30-37-2(B). However, even accepting Defendant's argument regarding the theory of the case, the CDM statute and the sexually oriented materials statute contain different elements. The CDM statute requires that the material encourage delinquency, in this case, either encouraging or tending to encourage Y.G. to commit incest or conduct herself in a manner injurious to her morals, health, or welfare. The sexually oriented materials statute only requires the knowing delivery of harmful materials to a minor.

**{31}** Further, in *State v. Cuevas*, 94 N.M. 792, 792, 617 P.2d 1307, 1307 (1980), *overruled on other grounds by Pitts*, 103 N.M. 778, 714 P.2d 582, our Supreme Court examined the general/specific rule in a case involving an adult defendant who attended a party with minors and demonstrated how to drink tequila with a lemon. The jury convicted the defendant of CDM and, on appeal, this Court held that the general/specific rule required that the defendant be charged and convicted of violations of the liquor control act, which criminalizes "aid[ing] or assist[ing] a minor to buy, procure[,] or be served with alcoholic liquor." *Cuevas*, 94 N.M. at 793, 617 P.2d at 1308. Our Supreme Court reversed, holding that "[CDM] is a crime separate and distinct from any underlying violation of the law. In fact, this Court has said that the underlying act does not have to be illegal if the element of contributing to the delinquency of a minor is still present." *Id.* at 794, 617 P.2d at 1309. The Court noted that "[a]n adult can, almost always, be prosecuted under the specific statute

11

dealing with liquor, drugs, sex, etc.[, but the] legislative purpose [of the CDM statute] is different from that behind our drug and liquor laws." *Id.*

**{32}** This case is similar and therefore governed by *Cuevas*. Although Defendant's conduct leading to the CDM charge could also have led to a conviction under the sexually oriented materials statute, CDM is separate and distinct from any underlying violation of the law. *See id.* The State had discretion to determine charges that should be brought against Defendant based upon the evidence available to support them. *See Cleve*, 1999-NMSC-017, ¶ 26 ("This Court has long acknowledged the [state's] broad discretion to conduct criminal prosecutions, including its power to select the charges to be brought in a particular case." (internal quotation marks and citation omitted)). Defendant's conviction for CDM did not violate the general/specific rule, and the State was not required to charge Defendant under the sexually oriented materials statute.

**CONCLUSION**

**{33}** We hold that (1) the State presented sufficient evidence to support Defendant's conviction; (2) the CDM statute did not violate Defendant's right to free expression under the federal and state constitutions; (3) the CDM statute is not unconstitutionally overbroad under the First Amendment to the United States Constitution; (4) as a matter of due process, the CDM statute is not unconstitutionally vague; and (5) under the general/specific rule, the State was not required to charge Defendant for violating the statute prohibiting providing sexually oriented materials harmful to a minor instead of CDM. Accordingly, we affirm.

**{34}** **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**I CONCUR:**

_____
**J. MILES HANISEE, Judge**

**JONATHAN B. SUTIN, Judge (specially concurring)**

**SUTIN, Judge (specially concurring).**

**{35}** I concur in the overbreadth, vagueness, and general/specific dispositions and do not write separately to discuss aspects of those dispositions. I concur, as well, in the as-applied disposition, but write separately only to express my view that the CDM statute, as applied here, should be analyzed under strict scrutiny and not intermediate scrutiny. I do so not only because I see the CDM statute as content-based under the circumstances here. I also do so because I see the CDM statute as a statute that can all too easily give rise to prosecutorial

overreach and to outlier jury verdicts. *See State v. Butt*, 2012 UT 34, ¶ 32, __P.3d__ ("However, the fact that the jury must measure patent offensiveness against contemporary community standards does not mean . . . that juror discretion in this area is to go unchecked." (omission in original) (alteration, internal quotation marks, and citation omitted).

**{36}** Initially, I do not see a purpose in attempting to distinguish or separate the writing at issue, its delivery, and its effect, in analyzing the constitutional issues. Here, the charge against Defendant arose out of the writing and delivery of a letter encouraging criminal or immoral sexual activity, conduct no different than a face-to-face verbal encouragement consisting of the same content. Effect is built into the statutory element. Thus, I see no need to attempt any distinction or separation in justifying Defendant's conviction under the CDM statute.

**{37}** The problematic language of the CDM statute with which I have concern here is that which criminalizes acts that tend to encourage or encourage a minor to act in a way that is injurious to his or her health, morals, or welfare. Under New Mexico case law, children are to be protected in instances in which another's speech or act can result in a child engaging in conduct not tolerated by a community under the community's sense of decency, propriety, or morality, and the fact finder is to be the determiner of whether the conduct is or is not to be tolerated under a community standard. *See Trevino*, 116 N.M. at 531, 865 P.2d at 1175 (stating that, under the CDM statute, "[w]e always have relied on juries to determine what acts constitute contributing to delinquency in a particular case" including "[t]he common sense of the community, as well as the sense of decency, the propriety, and the morality which most people entertain" (internal quotation marks and citation omitted)); *Barr*, 1999-NMCA-081, ¶ 17 ("The purpose of the CDM statute is to protect children from harmful adult conduct." (internal quotation marks and citation omitted)); *Fawcett*, 114 N.M. at 546-47, 843 P.2d at 848-49 (discussing jury instructions allowing the jury to convict the defendant for speech unacceptable or beyond decency under community "tolerance" standard and indicating that the issue is a jury issue). By my special concurrence here, I hope to at least lay the foundation for the careful and strict scrutiny I believe should be required in cases such as this.

**{38}** The constitutional question under discussion "concerns the validity of the statute[] as applied to the specific facts of [this] case[]." *Bartnicki*, 532 U.S. at 524. The issue is whether the CDM statute is content-neutral or content-based.

> Deciding whether a particular regulation is content based or content neutral is not always a simple task . . . . As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based. In determining whether a regulation is content based or content neutral, we look to the purpose behind the regulation; typically, government regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech.

13

*Id.* at 526 (omission in original) (alteration, emphasis, internal quotation marks, and citations omitted). "[T]he mere assertion of a content-neutral purpose [is not] enough to save a law which, on its face, discriminates based on content." *Turner Broad. Sys., Inc.*, 512 U.S. at 642-43.

**{39}** The basic purpose of that part of the CDM statute applicable here is to regulate the encouragement[1] of a minor to commit an offense or engage in conduct injurious to the minor's health, morals, or welfare. Included in that basic purpose, of course, is the intent to protect minors. *See Barr*, 1999-NMCA-081, ¶ 17; *see also Ebert*, 2011-NMCA-098, ¶ 12 (stating that "it is beyond question that the State has a compelling interest in protecting children from sexual predators and sexual exploitation"); *Brown*, 131 S. Ct. at 2736 ("No doubt a [s]tate possesses legitimate power to protect children from harm[.]"). Still, "[m]inors are entitled to a significant measure of First Amendment protection, and only in relatively narrow and well-defined circumstances may government bar public dissemination of protected materials to them." *Brown*, 131 S. Ct. at 2735 (internal quotation marks and citation omitted).

**{40}** The CDM statute can unquestionably regulate speech when it criminalizes encouragement of conduct. The speech it regulates includes protected speech. That speech is protected which does not fall within the categories of unprotected speech such as obscenity, child pornography, defamation, fraud, incitement, fighting words and speech integral to criminal conduct. *See id.* at 2733 (setting out limited areas of unprotected speech); *United States v. Stevens*, ___ U.S. ___, 130 S. Ct. 1577, 1584, 1586 (2010) (same).

**{41}** While the CDM statute does not specifically and expressly regulate encouragement of minors to engage in sexual offenses or unacceptable sexual activities, in the balance, I view the CDM statute as content-based insofar as it specifically criminalizes the encouragement of minors to act in a way that is injurious to their morals. To proscribe encouragement to engage in conduct considered immoral under community standards is tantamount to proscribing encouragement to engage in immoral sexual conduct. The proscription obviously includes engaging in sexual activity considered impermissible or intolerable under "the morality which most people entertain" in a community. *Trevino*, 116 N.M. at 531, 865 P.2d at 1175 (describing the community standard as "[t]he common sense of the community, as well as the sense of decency, the propriety, and the morality which most people entertain" (internal quotation marks and citation omitted)); *Fawcett*, 114 N.M. at 546, 843 P.2d at 848 ("We believe [Article II, Section 17 of] our constitution requires that, although the community might not find the materials 'acceptable,' it must find them 'intolerable' before they may be deemed as an 'abuse' of the right to freely speak, write, and publish sentiments on all subjects."). Thus, as it applies to the facts of this case, I would label the CDM statute as content-based, requiring strict scrutiny. *See City of Los Angeles*

---

[1] By "encourage" or "encouragement" in this Concurring Opinion, I mean to include both "tend to encourage" and "encourage."

14

*v. Alameda Books, Inc.*, 535 U.S. 425, 434, 455 (2002) (stating that content-based regulation of speech must pass strict scrutiny); *City of Albuquerque v. Pangaea Cinema LLC*, 2012-NMCA-075, ¶ 29, ___ P.3d ___ (same), *cert. granted*, 2012-NMCERT-007, ___ P.3d ___ (No. 33,693, July 20, 2012).

**{42}** Under strict scrutiny, a regulation is invalid "unless it is justified by a compelling government interest and is narrowly drawn to serve that interest." *Brown*, 131 S. Ct. at 2738; *see also Pangaea Cinema*, 2012-NMCA-075, ¶ 29 (stating that under strict scrutiny, the government must "show that it has a compelling interest in the challenged scheme and that it has accomplished its goals by employing the least restrictive means"). The CDM statute as applied to the facts in this case passes strict scrutiny muster. I do not doubt that New Mexico has a compelling interest in protecting minors from harm when adults encourage minors to engage in injurious, immoral, intolerable sexual conduct. *Cf. Ferber*, 458 U.S. at 756-57 (stating that "the [s]tates are entitled to greater leeway in the regulation of pornographic depictions of children[,]" that "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance[,]" and that "[i]t is evident beyond the need for elaboration that a [s]tate's interest in safeguarding the physical and psychological well-being of a minor is compelling" (internal quotation marks and citation omitted)); *Butt*, 2012 UT 34, ¶ 35 ("Because of the [s]tate's exigent interest in preventing distribution to children of objectionable material, it can exercise its power to protect the health, safety, welfare[,] and morals of its community by barring the distribution to children of books recognized to be suitable for adults." (internal quotation marks and citation omitted)).

**{43}** Nor do I doubt that the CDM statute need not have greater restrictive tailoring than exists in regard to that protection when it comes to adult encouragement of minors to engage in immoral, injurious, intolerable, sexual conduct. *See Alameda Books*, 535 U.S. at 455 ("A restriction based on content survives only on a showing of necessity to serve a legitimate and compelling governmental interest, combined with least restrictive narrow tailoring to serve it[.]"); *Ebert*, 2011-NMCA-098, ¶ 14 (holding a statute proscribing unlawful solicitation of children to be narrowly tailored, under strict scrutiny, to a compelling interest of protecting children from online sexual predators).

_____
**JONATHAN B. SUTIN, Judge**

**Topic Index for *State v. Garcia*, No. 31,470**

**APPEAL AND ERROR**
Standard of Review
Substantial or Sufficient Evidence

**CONSTITUTIONAL LAW**
Due Process

Freedom of Speech
Vague or Overbroad

**CRIMINAL LAW**
Contributing to the Delinquency of a Minor
Sexual Offences

**CRIMINAL PROCEDURE**
Due Process

**STATUTES**
Applicability
Rules of Construction
Vagueness